**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**

January 28, 2013

No. 11-31045

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA

Plaintiff–Appellee

v.

BYRON NEAL, also known as Kabooby Neal

Defendant–Appellant

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:07-CR-425

Before WIENER, CLEMENT, and PRADO, Circuit Judges.

EDWARD C. PRADO, Circuit Judge:[*]

Appellant Byron Neal pleaded guilty to all charges in a five-count indictment. The next day, he moved to withdraw his guilty pleas, but the district court denied his motion, and sentenced him to 360 months' imprisonment. Neal appeals, arguing that the district court violated Rule 11 of the Federal Rules of Criminal Procedure when it accepted his pleas, that it erred in denying his motion to withdraw his pleas, and that it misapplied the statutory minimum and maximum when determining his sentence. We VACATE Neal's

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 11-31045

convictions and REMAND for re-pleading with respect to the last two of the five counts in the indictment, and AFFIRM his sentence with respect to the first three.

## I. BACKGROUND

In 2007, Byron Neal was indicted by a federal grand jury in a three-count indictment for distribution and possession of cocaine base ("crack"). In 2009, while Neal was incarcerated and under indictment for those offenses (Counts One, Two, and Three), the government recorded phone conversations during which Neal allegedly made arrangements to have an informant who was planning to testify against him killed. After obtaining those recordings, the Government drew up a superseding indictment, which included the original drug-related counts, as well as two additional counts for conspiracy and witness tampering (Counts Four and Five).

After the superseding indictment was returned, Neal noticed his intent to plead not guilty by reason of insanity, and later also alleged that he was incompetent to stand trial. As part of its effort to evaluate these claims, the district court required that Neal undergo various medical and psychological examinations. At least one examining expert suggested it was possible that Neal was mentally retarded. After a hearing, the district court determined that Neal was competent to stand trial, and Neal voluntarily withdrew his insanity defense. A trial was scheduled for July 18, 2011. The Government prepared a factual basis in the event Neal decided to plead guilty to any of the charges.

Neal's trial date arrived, without his having made any indication that he planned to plead guilty. Prospective jurors had already assembled in another room in the courthouse in anticipation of Neal's trial. Once proceedings began, however, Neal's attorney stated that he and his client had discussed the evidence, the factual basis, and other matters, and that their views of Neal's case were "diametrically opposed." Neal then personally addressed the district court.

No. 11-31045

He indicated that he "would like to go to trial," but was concerned because his attorney was "saying we ain't got no defense and I'm guilty." He questioned whether he should go to trial if it was "already rigged up." The district court assured Neal that his attorney was giving him his best advice, and that nothing was "rigged" against him. After a recess, the jury was selected.

Before any further proceedings could begin, Neal's lawyer addressed the court. He stated that Neal had signed the factual basis and was now prepared to enter a guilty plea, but also noted that no plea agreement had been made. After another assurance from Neal that he would be pleading "straight up without a plea agreement," the court began the plea colloquy. At one point, the court asked Neal how he was feeling,[1] and the following exchange occurred:

THE DEFENDANT: [The prison guard] took my CPAP machine. I ain't had my CPAP. I ain't bee[n] able to sleep. They took that.

THE COURT: That's for sleep apnea.

THE DEFENDANT: Yes, sir.

THE COURT: Okay. Are you getting any side effects right now from any of the medications?

THE DEFENDANT: My side be hurting. I be getting numb and all that, yes, sir.

THE COURT: You understand what's going on, though, here right now, don't you?

THE DEFENDANT: To a degree.

THE COURT: What do you not understand?

THE DEFENDANT: Well, I'm trying to figure out, I understand I got to take the plea deal [sic], but is there

---

[1] Neal periodically experiences numbness on the right side of his body, and suffers from sleep apnea, for which he uses a continuous positive airway pressure (CPAP) machine.

No. 11-31045

|  |  |
|---|---|
|  | any way possible I could go to trial on the conspiracy? |
| THE COURT: | Well, we're not going to negotiate a plea here right now. You need to either plead guilty, if that's what you want to do or go to trial. You have a choice, but we're not negotiating a plea agreement here now. You're either going to plead or you're not going to plead. That's your choice. |
| THE DEFENDANT: | I'm going to go with it. |

Significantly, the court never clarified whether it was "possible to go to trial on the conspiracy" while still "tak[ing] the plea deal" with respect to the crack charges. The court went on to provide Neal with detailed explanations of the charges against him and the nature of the rights he was waiving by entering his guilty pleas. The judge also asked if Neal admitted "that [he] conspired . . . to kill the confidential DEA informant who had assisted the DEA in their investigation of [his] drug dealing" (Count Four), and if "[he] . . . knowingly attempt[ed] to kill a known confidential informant in order to prevent his attendance and testimony at [his] trial" (Count Five). Neal answered, "Yes, sir," to both questions. The plea colloquy ended with the following:

|  |  |
|---|---|
| THE COURT: | Okay. Are you still willing to waive and give up your right to a trial by jury or judge? |
| THE DEFENDANT: | I guess I ain't got—yes, sir. |
| THE COURT: | Well, you got to say "yes" or "no." Are you willing to do that? |
| THE DEFENDANT: | Yes, sir. |

Neal ultimately pleaded guilty to all five counts of the superseding indictment.

No. 11-31045

The next day, Neal submitted to the court a letter he had written, styled "To Take Plea of Guilty Back." The court later construed the letter as a motion to withdraw a guilty plea. In the letter, Neal did not specify which of his guilty pleas he wished to withdraw, but wrote, "Sir, I really wanted to go to trial and prove that I am not a bad person. Sir, now I will have on me trying to murder someone. But, in reality, I was manipulated by a fellow inmate . . . ."[2] He asserted that he had been "very confused and under duress by the actions of my attorney and the prosecutor." The letter also stated, "Sir, you said in court that we have a right too [sic] be prove [sic] guilty. Sir, I am not telling you that I am this person that did not do wrong. I am saying that I have a right to a fair day in court . . . ." After reviewing Neal's claim using the test set forth in *United States v. Carr*, 740 F.2d 339 (5th Cir. 1984), the district court denied the motion and scheduled Neal's sentencing.

At sentencing, Neal made a number of rambling and incoherent statements to the court. His attorney stated that Neal "rarely remember[ed] anything from one conversation to the next." The court acknowledged that Neal suffered from a number of mental health problems, and stated that it was taking this fact into account in determining the appropriate sentence. Neal was sentenced to 360-month terms of imprisonment on Counts One, Two, Four, and Five, and to a 240-month term of imprisonment on Count Three, all to run concurrently. He timely appealed his sentence.

## II. DISCUSSION

On appeal, Neal makes three arguments. First, he claims that by failing to remedy his misconception that he could only plead guilty to the drug-related counts if he pleaded guilty to all counts in the indictment, the district court violated Rule 11 of the Federal Rules of Criminal Procedure. Second, he argues

---

[2] In his brief, Neal contends that all five convictions should be vacated.

that the district court erred in its application of the factors set out in *United States v. Carr*, and thus improperly denied his motion to withdraw his guilty pleas. Finally, he argues that he is entitled to resentencing based on the retroactive application of the Fair Sentencing Act of 2010, 124 Stat. 2372. We evaluate each of his claims in turn.

## A.    Neal's Rule 11 Claim

We find that Rule 11 of the Federal Rules of Criminal Procedure was violated when the district court failed to explain to Neal, after he asked a question about the issue, that he was allowed to plead guilty to the drug-related charges against him while proceeding to trial on the conspiracy-related charges. Because the record provides good indications that Neal would have opted for a trial on Counts Four and Five if he had known he could, the Rule 11 violation affected Neal's substantial rights. We vacate his convictions on those charges and remand his case so that he can plead not guilty if he so desires.

### i.    *Standard of Review*

When, as here, a defendant has failed to raise an objection to a violation of Rule 11 at trial, review is for plain error. *United States v. Dominguez Benitez*, 542 U.S. 74, 76 (2004). Plain error review involves four determinations: the appeals court must conclude that (1) there was an error or defect not intentionally relinquished or abandoned by the appellant; (2) the error was clear or obvious, rather than subject to reasonable dispute; (3) the error affected the defendant's substantial rights; and (4) the error seriously affected the fairness, integrity, or public reputation of the judicial proceedings. *Puckett v. United States*, 556 U.S. 129, 135 (2009); *see also United States v. Marcus*, 130 S. Ct. 2159, 2164 (2010); *United States v. Olano*, 507 U.S. 725, 732 (1993); *United States v. Mudekunye*, 646 F.3d 281, 291–96 (5th Cir. 2011) (Barksdale, J., dissenting) (providing detailed overview of the history of plain error review and current

No. 11-31045

difficulties in its application); *United States v. Marek*, 238 F.3d 310, 315 (5th Cir. 2001) (identifying the four-pronged approach).

### ii.     *The Requirements of Rule 11*

Rule 11 governs the process by which defendants enter guilty pleas in federal court. FED. R. CRIM. P. 11; *see also* Charles Alan Wright et al., *Federal Practice and Procedure* § 171 (4th ed. 2012). It mandates, among other things, that the court "inform the defendant of, and determine that the defendant understands . . . the right to plead not guilty," FED. R. CRIM. P. 11(b)(1)(B), and that the court "determine that the plea is voluntary," *Id.* 11(b)(2).[3] Neal, citing *Boykin v. Alabama*, 395 U.S. 238 (1969), argues that because neither his lawyer nor the court informed him of his right to plead not guilty to Counts Four and Five, his pleas were "not voluntary, knowing, or intelligent because he did not understand the nature of the constitutional rights he was waiving."[4] He also points to his below-normal intelligence and his inability to sleep the night before his trial date as contributing to his confusion during his colloquy. The Government argues that the district court explicitly urged Neal to seek clarification if he was confused, and that the court was, as a general matter, very thorough in confirming that Neal understood the implications and consequences of his pleas.

---

[3] A guilty plea must be voluntary, knowing, and intelligent not only for Rule 11 purposes, but also because due process demands it. *See United States v. Guerra*, 94 F.3d 989, 995 (5th Cir. 1996). Neal has not raised any constitutional due process arguments, and so our analysis is limited to assessing whether the requirements of Rule 11 were met.

[4] The Government, noting that the only count that charged a conspiracy was Count Four, maintains that there is nothing in the record to support a determination that Neal was inquiring about going to trial on Count Five. However, given that both charges arose from the same incident, in asking about the possibility of going to trial "on the conspiracy," Neal was likely referring to both Count Four and Count Five.

### iii.    *Whether the District Court Committed Clear or Obvious Error*

Because the Government makes no claim that Neal waived or abandoned any of his rights under Rule 11, we begin by inquiring whether there was clear or obvious error during Neal's plea colloquy.  There exists no binding case law that dictates whether or not the district court commits a "clear or obvious error" when it fails to ensure that a defendant knows that he may plead guilty to some charges and not guilty to others.  *See United States v. Steinberg*, 432 F. App'x 872, 874 (11th Cir. 2011) (per curiam) (unpublished) (finding a clear violation of Rule 11's proscription against the court's participating in plea negotiations when the judge actively misled the defendant to believe he had to plead guilty to the entire indictment or go to trial on all counts); *United States v. Williams*, 258 F. App'x 564, 565 (4th Cir. 2007) (per curiam) (unpublished) (finding no Rule 11 violation because "[a]lthough[] during the [Rule] 11 proceeding, [the defendant] expressed confusion about . . . whether he could potentially plead to only one count, . . . the court carefully addressed each issue"); *United States v. Friesen*, No. 98-6308, 1999 WL 828051, at *4–5 (10th Cir. Oct. 18, 1999) (unpublished) (finding defendant was not, as she claimed, confused as to whether she was pleading guilty to thirty-two counts of fraud, or just one count, and that therefore the plea was voluntary); *United States v. Johnson*, 89 F.3d 778, 781–83 (11th Cir. 1996) (noting that the district court correctly advised the defendant that he could plead guilty to one count while going to trial on another).

However, while no case is directly on point, language in this Court's case law lends support to the conclusion that the district court violated Rules 11(b)(1)(B) and 11(b)(2) when it failed to answer Neal's question about going to trial "on the conspiracy" in the affirmative.  *See, e.g.*, *Coody v. United States*, 570 F.2d 540, 541 (5th Cir. 1978) (per curiam) ("Routine questions on the subject of understanding the nature of the charges are insufficient; and a single response by the defendant that he 'understands' the charge gives no assurance or basis for

believing he does." (quoting *Sierra v. Gov't of Canal Zone*, 546 F.2d 77, 79 (5th Cir. 1977)); *United States v. Rodriguez–DeMaya*, 674 F.2d 1122, 1126 (5th Cir. 1982) (finding no Rule 11 violation in part because "[the judge] took an active role in the questioning, frequently asking the defendant if she understood what was being asked [and] whether she was *hearing*" (emphasis added)).  These cases highlight Rule 11's explicit requirement that the court not just announce that the defendant has the right to plead not guilty, but that it ensure the defendant understands he possesses that right.  The district court, in response to Neal's inquiry about whether he could go to trial on some of the counts against him, did not provide him with the correct answer, which was that he could.  *Cf. Johnson*, 89 F.3d at 781 (finding no error where the district court judge expressly clarified that the defendant could go to trial on one count while pleading guilty to the other).  In fact, the district court's response, namely that Neal "need[ed] to either plead guilty, if that's what [he wanted] to do or go to trial," arguably gave the (incorrect) impression that Neal's choice was binary—that he could either plead guilty to all charges or go to trial on all charges.

Finally, while Neal's mental incapacity may not have amounted to insanity at the time of his offenses or incompetency to enter a plea, *see Malinauskas v. United States*, 505 F.2d 649, 650 (5th Cir. 1974) (finding that the degree of mental competency required to plead guilty is the same as that required to stand trial), the district court's awareness of Neal's low level of intelligence, memory problems, and lack of sleep at the time of his colloquy made its duty to confirm Neal's comprehension that much greater.[5]  The district court did not "determine that the defendant understands . . . the right to plead not guilty" as Rule 11(b)(1)(B) demands, an error which was "clear or obvious" for purposes of plain

---

[5] The district court judge in this case seems to have been particularly cautious during the plea colloquy, and this Court does not suggest that something like blind indifference or carelessness on the part of the court contributed to the Rule 11 violation in this case.

error review.[6] *Cf. Puckett*, 556 U.S. at 135, 143 (indicating what constitutes lack of clarity or obviousness by noting that the second prong will sometimes have "bite" in the plea-agreement context in part because "[p]lea agreements are not always models of draftsmanship, so the scope of the Government's commitments will on occasion be open to doubt").

### iv.     *Whether the Error Affected Neal's Substantial Rights*

"An error affects substantial rights if it 'affect[s] the outcome of the district court proceedings.'" *United States v. Baker*, 538 F.3d 324, 333 (5th Cir. 2008) (alteration in original) (quoting *Olano*, 507 U.S. at 734).  In the context of a Rule 11 violation, a defendant "must show a reasonable probability that, but for the error, he would not have entered the plea." *Dominguez Benitez*, 542 U.S. at 83; *see also United States v. Cuevas–Andrade*, 232 F.3d 440, 443 (5th Cir. 2000) ("[A] defendant's substantial rights are affected if the district court's Rule 11 error[] may reasonably be viewed as . . . a material factor affecting [the defendant's] decision to plead guilty." (some alterations in original) (internal quotation marks omitted)).

In this case, there is substantial evidence in the record that Neal would have pleaded not guilty to Counts Four and Five if he had known he had the option to do so.  Neal had intended to plead not guilty to all five charges up until his scheduled trial date—indeed, jurors were assembled and ready in another room in the courthouse during Neal's colloquy.  The question that elicited the Rule 11 error is itself especially illustrative: Neal asked the court, "[I]s there any way possible *I could go to trial on the conspiracy*?"  Finally, while it is hardly dispositive, Neal submitted his pro se motion to withdraw his guilty pleas the day after he entered them, giving a good indication of how he would have pleaded had

---

[6] This determination is not to be read as establishing a requirement that a district court always explicitly clarify that the defendant may plead guilty to some charges without pleading guilty to others.  It is significant that in this case Neal specifically asked the court about this issue, clearly evincing his confusion about his right to plead not guilty.

he understood his options.  In the letter, he makes clear that he is particularly upset at the idea of having a murder conviction on his record.  Unlike cases where, for instance, the sentencing court merely failed to make the sentencing consequences clear to a defendant, and it is therefore debatable what the counterfactual scenario would have looked like, here, Neal clearly articulated the alternative he would have explored.  *Cf. United States v. Watch*, 7 F.3d 422, 429 (5th Cir. 1993) (holding that a failure to inform the defendant of the minimum possible sentence meant that the defendant did not fully understand the consequences of his plea and his rights were therefore automatically substantially affected).  But for the district court's mistake in failing to answer Neal's question, Neal would likely have pleaded not guilty to two counts to which he in fact pleaded guilty.

The Government argues that because Neal was given a 360-month sentence for each of the first four Counts, and those sentences were to run concurrently, his ultimate sentence was unaffected by the district court's error.  This argument confuses the sentencing-context and pleading-context standards for determining whether a defendant's rights have been substantially affected.  *Compare Mudekunye*, 646 F.3d at 289 ("A sentencing error affects a defendant's substantial rights if he can show a reasonable probability that, but for the district court's misapplication of the Guidelines, he would have received a lesser sentence.") *with Dominguez Benitez*, 542 U.S. at 83 (holding that a defendant must show reasonable probability that, but for the error, he would not have entered the plea).  The distinction between the two contexts makes sense, in part because convictions for different offenses carry with them different consequences, even if the sentence given for the two offenses is the same.  For example, a conviction for conspiring to commit murder is a "crime of violence" that would be given greater weight in a criminal history score calculation performed at a future, unrelated sentencing.  *See* U.S. Sentencing Guidelines Manual §§ 4A1.1(e), 4B1.2

cmt. n.1 (2012). Neal has demonstrated a reasonable probability that but for the district court's Rule 11 error, he would not have pleaded guilty to Counts Four and Five. This reasonable probability is all that is required for this Court to find that his substantial rights were affected.

## v.      *Whether the Error Affected the Fairness, Integrity, or Reputation of the Judicial Proceedings*

Once an appeals court has determined that the first three elements of plain error are present, it may exercise its discretion to correct the error if it seriously affects the fairness, integrity, or public reputation of judicial proceedings. *Puckett*, 556 U.S. at 135. The inquiry is case-specific and fact-sensitive. *United States v. Escalante–Reyes*, 689 F.3d 415, 424 (5th Cir. 2012) (en banc). It is difficult to imagine a Rule 11 error that more greatly affects the integrity of the pleading process than one that changes the outcome from a not-guilty plea to a guilty plea. *Cf. North Carolina v. Alford*, 400 U.S. 25, 31 (1970) ("The standard [for determining the validity of guilty pleas] remains whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant."); *United States v. John*, 597 F.3d 263, 288 (5th Cir. 2010) ("[W]hether a sentencing error seriously affects the fairness, integrity, or public reputation of judicial proceedings is dependent upon the degree of the error and the particular facts of the case.").

We therefore find that the four prongs of the plain-error analysis are satisfied, and vacate Neal's convictions on Counts Four and Five and remand to the district court so that he can plead anew.

## B.      **Withdrawal of Guilty Pleas**

Because our disposition of Neal's Rule 11 claim allows for new pleading with respect to Counts Four and Five, his claim that he should be allowed to withdraw the guilty pleas corresponding to those counts is moot. We therefore review the district court's decision to deny Neal's motion to withdraw his guilty

No. 11-31045

pleas only as it relates to Counts One, Two, and Three of the superseding indictment. Because the district court did not abuse its discretion in determining that Neal did not meet the burden required to allow withdrawal of his pleas, we affirm its denial of his motion.

A criminal defendant may withdraw his plea before sentencing if he provides a fair and just reason. FED. R. CRIM. P. 11(d)(2)(B). A district court's ruling on a motion to withdraw a guilty plea is reviewed for an abuse of discretion. *United States v. Powell*, 354 F.3d 362, 370 (5th Cir. 2003). The district court evaluated Neal's motion using the appropriate seven-factor totality-of-the-circumstances test. *See Carr*, 740 F.2d at 343–44; *Powell*, 354 F.3d at 370. That test requires the district court to consider: (1) whether the defendant has asserted his innocence; (2) whether withdrawal would prejudice the government; (3) whether the defendant has delayed in filing his withdrawal motion; (4) whether withdrawal would substantially inconvenience the court; (5) whether close assistance of counsel was available; (6) whether the original plea was knowing and voluntary; and (7) whether withdrawal would waste judicial resources. *Carr*, 740 F.2d at 343–44. A defendant cannot withdraw his plea simply because he has changed his mind after further reflection. *See United States v. Hurtado*, 846 F.2d 995, 997 (5th Cir. 1988).

The district court extensively analyzed the *Carr* factors. It found that of the seven, only the third factor weighed in Neal's favor. The district court determined that Neal "has never really asserted his innocence," but rather had stated that he wanted to go to trial to show that he "was not a bad person." The district court also determined that withdrawal of the guilty plea would substantially prejudice the Government given that the Government had expended "a tremendous amount of effort" in preparation for trial and had been ready for trial when Neal entered his plea. Additionally, the court found that allowing withdrawal would waste judicial resources, that Neal had been closely

assisted by his attorney, and that Neal's plea had been knowing and voluntary. It concluded Neal's motion should not be granted.

We find that Neal fails to show error in the district court's determinations. Although Neal contends that his claim that he is "not a bad person" should be regarded as an assertion of innocence, he does not point to any clear assertion of innocence on record, especially not with respect to his drug-related offenses. In fact, at one point in his letter Neal stated, "I am not telling you that I am this person that did not do wrong," further undermining the claim that he clearly asserted his innocence at any point.

Neal is probably correct in his argument that while the Government would experience some inconvenience in again preparing for trial, it would not be prejudiced in its ability to prosecute the case. However, "the absence of prejudice to the Government does not necessarily justify reversing the district court's decision to deny a motion to withdraw a guilty plea." *United States v. McKnight*, 570 F.3d 641, 649 (5th Cir. 2009). In any case, the district court did not clearly err in finding that this factor favors the Government.

Nor is the district court's finding that withdrawal would waste judicial resources clearly erroneous. Rather, that finding is supported by the fact that the district court had scheduled the matter for trial and had selected a jury before Neal decided to plead guilty. The district court is in the best position to make such a determination, and *Carr* recognized that a district court's determination that withdrawal of a guilty plea would waste judicial resources "is entitled to substantial deference." 740 F.2d at 345.

The question of whether Neal benefitted from close assistance of counsel is fact-intensive. *See McKnight*, 570 F.3d at 646–47. The record here indicates that Neal discussed his case extensively with his lawyer, and his lawyer counseled him to plead guilty in the face of overwhelming evidence and a dearth of viable defense options. Neal stated during the plea colloquy that he had had

these discussions with his attorney, and that he was satisfied with the advice he received. These facts are sufficient to conclude the district court did not clearly err in its disposition of this factor of the test. *See id.* at 647.

Finally, the district court was correct in its application of the remaining *Carr* factor, whether the original guilty plea was knowing and voluntary. While it may not be at all clear that Neal's pleas with respect to Counts Four and Five were intelligent and voluntary, the same is not true for his pleas as to the first three counts of the indictment. Indeed, Neal's desire to plead guilty to Counts One, Two, and Three was strong enough to lead him to forgo trial on the other counts he indicated at the time he wanted to contest in court. Taken together, we find the *Carr* factors are largely against the defendant, and that the district court did not abuse its discretion in denying his motion to withdraw his guilty pleas.

## C.    Fair Sentencing Act Remand

At the time the district court sentenced Neal in October 2011, under our precedent the Fair Sentencing Act (FSA) did not apply to defendants such as Neal, who committed their crack offenses before the FSA became effective but were sentenced after the FSA's effective date. *See United States v. Tickles*, 661 F.3d 212, 214–15 (5th Cir. 2011), *cert. granted, judgment vacated,* 133 S. Ct. 66 (2012) and *cert. granted, judgment vacated sub. nom. Gibson v. United States*, 133 S. Ct. 67 (2012). However, in June 2012, the Supreme Court determined that the new lower mandatory minimums of the FSA applied to such defendants, thereby abrogating *Tickles. See Dorsey v. United States*, 132 S. Ct. 2321, 2335–36 (2012). Neal argues that his case should be remanded for resentencing in light of *Dorsey.* The Government asserts that the sentences should be affirmed because Neal's sentences are within the applicable statutory ranges.

Because the error was not objected to in the district court, we conduct a plain error review of his claim. *See United States v. Mondragon–Santiago*, 564

F.3d 357, 361 (5th Cir. 2009). The district court's error, though clearly not an error at the time of sentencing, is obvious at the time of appellate review and therefore satisfies the second prong of the plain error standard. *Johnson v. United States*, 520 U.S. 461, 468 (1997); *Escalante–Reyes*, 689 F.3d at 423.

To meet the requirements of the third prong and show his substantial rights were affected, Neal must demonstrate that "the error increased the term of [his] sentence, such that there is a reasonable probability of a lower sentence on remand." *Escalante–Reyes*, 689 F.3d at 424 (internal quotation marks omitted). Neal cannot meet this burden. Under pre-FSA law, where the defendant was convicted of an offense involving 50 grams or more of crack (Neal's Counts One and Two), the statutory minimum sentence of imprisonment was ten years and the statutory maximum was life. *See* 21 U.S.C. § 841(b)(1)(A)(iii) (2007). The FSA lowers the mandatory minimum sentence to five years of imprisonment and lowers the statutory maximum to 40 years. *See* § 841(b)(1)(B)(iii).[7] The 360-month (30-year) sentences Neal received on Counts One and Two do not exceed the lower statutory maximum under the FSA, and there is no indication in the record that the district court would have imposed a lesser sentence had the lower statutory minimum and maximum sentences of imprisonment been in place at the time of sentencing. *Cf. United States v. Hernandez–Gonzalez*, 405 F.3d 260, 262 (5th Cir. 2005) (holding that the fact that a sentence imposed under the pre-*Booker* mandatory guideline regime was at the bottom of the mandatory range is not enough to create a reasonable probability that the defendant would have received a different sentence upon resentencing under an advisory guidelines system). Therefore, Neal's substantial rights were not affected by the fact that Fifth Circuit precedent required that the court use

---

[7] The FSA has no effect on the statutory maximum or minimum for Count Three.

No. 11-31045

more punitive sentencing ranges at the time of his sentencing; we decline to remand his case for resentencing on these grounds.

## III.  CONCLUSION

For the foregoing reasons, we hold that Rule 11 was violated as it pertains to Counts Four and Five.  However, the district court did not abuse its discretion in failing to grant Neal's motion to withdraw his guilty pleas, and there is no need to resentence Neal on the basis of the Supreme Court's recent decision in *Dorsey v. United States*.  Therefore, we VACATE Neal's convictions on Counts Four and Five and REMAND to allow him to re-plead; we AFFIRM the district court's denial of Neal's motion to withdraw his guilty pleas; and we AFFIRM the sentences imposed for convictions on Counts One, Two, and Three of the superseding indictment.

17