# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 14-40389

United States Court of Appeals
Fifth Circuit

**FILED**

April 29, 2015

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff – Appellee,

v.

SANDRA RIVERA,

Defendant – Appellant.

Appeal from the United States District Court
for the Southern District of Texas

Before STEWART, Chief Judge,* and KING and ELROD, Circuit Judges.
JENNIFER WALKER ELROD, Circuit Judge:

Sandra Rivera violated the conditions of her supervised release. The district court rejected the within-Guidelines recommendation of the magistrate judge and departed upward, imposing the five-year maximum revocation sentence. Rivera timely appealed her revocation sentence, arguing that the district court relied upon improper considerations when it imposed it. Because Rivera has not satisfied the fourth prong of the plain-error standard, we affirm.

---

* Carl E. Stewart, Chief Judge, concurring in the judgment only.

No. 14-40389

## I.

In 2001, Rivera pleaded guilty to possession of cocaine with intent to distribute and was sentenced to 121 months' imprisonment. After her release from prison, Rivera was deported to Mexico and began serving her five-year term of supervised release. Rivera violated the conditions of her supervised release by committing two new law violations—illegal reentry and murder—and by violating a special condition that prohibited her from illegally reentering the United States.[1] As to the murder, Rivera pleaded no contest in state court and received a 28-year sentence, but she was never charged with or convicted of illegal reentry.

The probation officer prepared a worksheet that calculated a Guidelines range of 24–30 months' imprisonment for the violations and noted that the statutory maximum revocation sentence was five years. At a final revocation hearing before the magistrate judge, Rivera admitted the violations and asked for a sentence at the low end of the Guidelines to run concurrently with her 28-year state sentence. The magistrate judge recommended a revocation of supervised release and a within-Guidelines sentence of 28 months to run consecutive to her state sentence.

Rivera requested and received a hearing before the district court to review the magistrate judge's sentencing recommendation, and during this hearing, the district court made numerous references to the seriousness of the murder and to the court's desire to provide a just punishment. The district court began by asking why Rivera had not been charged with illegal reentry, noting that "this is the most serious one I've ever had in front of me where someone returns illegally and then the new law violation is murder." The

---

[1] Rivera's conditions of supervised release required that she commit no new law violations and separately required that she not illegally reenter the United States.

No. 14-40389

district court noted that Rivera would have faced 57–71 months had she been convicted of illegal reentry and expressed surprise that she was not charged with that crime. The district court then stated:

> I can tell you, Ms. Rivera, because I don't make it a habit of keeping from people what concerns me. I just tell you, in case you want to try to address and convince me otherwise, I actually think the magistrate judge was extremely generous with her recommendation. I'm prepared to upwardly—vary upwardly depart and give you the five years. You committed a murder. I just don't know that it gets any worse than that. So, if you were taking issue with the recommendation, which I'm not bound to accept, I can tell you right now that I thought it was very, very generous. I mean, you graduated from trafficking cocaine to killing someone.

After delivering these remarks, the district court asked to hear from Rivera's counsel. Rivera's counsel recounted her transfer from prison to a medical facility due to mental illness and explained that she had suffered from mental illness since childhood. When the district court asked why Rivera appeared to be smiling and whether counsel doubted her competency, counsel responded that he did not doubt Rivera's competency, that Rivera meant no disrespect, and that Rivera was aware of her circumstances and had asked for a review of the sentence recommendation because she wanted her sentence to run concurrently with her state murder sentence. Counsel then explained that "[t]his unfortunately stems from childhood issues where she was the victim of sexual abuse at the hands of a relative, along with another minor relative of hers."

The district court responded: "What does? The fact that she traffics [sic] cocaine or the fact she kills people with screwdrivers and razors?" Counsel clarified that he was simply advising the court of the reason for her mental

3

illness and transfer to a medical facility, and the reason that he did not doubt her competency. Counsel also advised the district court that he had spoken to Rivera, "[s]he has a very clear memory of everything that I've asked her," and she understood everything that was happening. Counsel also mentioned that Rivera had stopped taking her prescribed medication because she did not like the side effects, but he believed that this did not affect Rivera's ability to understand what was happening.

The district court then interjected: "she's almost laughing. She's about to get a five-year sentence, which I'm going to run consecutively, and she apparently thinks this is all funny." At the district court's invitation, Rivera's counsel conferred with his client. When they had finished conferring, the district court asserted that it had "the right to consider 3553 to determine what sentence is appropriate," and the court asked whether it should consider anything else on Rivera's behalf. Counsel then notified the district court that Rivera had been smiling because "she was reacting to the translation and the things [counsel] was saying about the medicine that she was taking and the side effects," and she was not laughing at the court.

In response, the district court stressed the seriousness and brutality of the murder and the insufficiency of the punishment that Rivera had received for it:

> The fact that she's before the Court on probably the most serious allegation, new law violation that I've ever considered. And the murder that she committed was horrific. I'm looking here at a statement that she gave on that case, and she killed this person with a knife, a hammer and a screwdriver, stabs him in the neck with a screwdriver. Extremely violent. And the fact is that the sentence of 28 years in the state system isn't really 28 years. Your expected parole eligibility is November 20th of 2025, which is really only 11 years from now. So a 28-year sentence is not, in effect, a 28 year sentence, as far as I know. On top of that, I've

4

been told that you have a burglary conviction . . . where the sentence ran concurrent to the sentence that she received in Bexar County for the murder. . . . So she already got an additional benefit by having another criminal episode run concurrent to the sentence that she received in state court.

Rivera, her counsel, and the probation officer clarified that Rivera's burglary sentence had run concurrently with her federal drug sentence, not her state murder sentence.  Rivera's counsel then advised that "we're just asking for leniency as much as the Court can muster given the situation."  The district court responded by noting that Rivera could have been charged with and convicted of illegal reentry, that her Guidelines range for the offense would have been 57–71 months, and that because of the five-year statutory maximum, the district court was "capped at giving her less than what she would have received for the illegal re-entry after deportation."

Rivera's counsel and the government indicated that they had nothing further to add, and the district court departed upward to the maximum, sentencing Rivera to five years' imprisonment.  This appeal followed.

## II.

Ordinarily, this court reviews revocation sentences under a "plainly unreasonable" standard.  *United States v. Miller*, 634 F.3d 841, 843 (5th Cir. 2011).  As Rivera concedes, however, her failure to object in the district court results in plain-error review.  *United States v. Whitelaw*, 580 F.3d 256, 259–60 (5th Cir. 2009); Fed. R. Crim. P. 52(b).

## III.

18 U.S.C. § 3583(e) provides in pertinent part:

The [district] court may, after considering the factors set forth in section 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7), revoke a term of supervised release, and require the

5

defendant to serve in prison all or part of the term of supervised release authorized by statute for the offense that resulted in such term of supervised release without credit for time previously served on postrelease supervision, if the court . . . finds by a preponderance of the evidence that the defendant violated a condition of supervised release, except that a defendant whose term is revoked under this paragraph may not be required to serve on any such revocation more than 5 years in prison if the offense that resulted in the term of supervised release is a class A felony . . . .

18 U.S.C. § 3583(e)(3). In *Miller*, this court observed that § 3583(e) requires district courts to consider certain § 3553 factors but omits from this list § 3553(a)(2)(A), which concerns "the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense." 18 U.S.C. § 3553(a)(2)(A). In view of Congress's deliberate omission, *Miller* held that "it is improper for a district court to rely on § 3553(a)(2)(A) for the modification or revocation of a supervised release term." 634 F.3d at 844. Thus, although this may be counterintuitive, when imposing a sentence for violation of conditions of supervised release, district courts may not consider the need for the sentence imposed to reflect the seriousness of the offense or to provide just punishment for the offense. *Id.* After *Miller*, this court clarified that a sentencing error occurs when an impermissible consideration is a dominant factor in the court's revocation sentence, but not when it is merely a secondary concern or an additional justification for the sentence. *United States v. Walker*, 742 F.3d 614, 616 (5th Cir. 2014).

This appeal raises the single question of whether the seriousness of Rivera's murder and the need to provide just punishment were dominant factors in Rivera's revocation sentence, or rather only secondary concerns or additional justifications. Our review of the record compels us to reach the

former conclusion.   The district court did mention Rivera's unrepentant demeanor at sentencing, the fact that Rivera had not been charged with or convicted of illegal reentry, and the fact that Rivera had previously received the benefit of a concurrent sentence after her commission of a prior offense. However, the seriousness of Rivera's murder and the need to provide a just punishment were dominant factors in the district court's sentencing decision. Throughout the hearing, the district court repeatedly stressed the seriousness and brutality of the murder and the inadequacy of the state prison sentence that Rivera had received for it.  These were not simply passing remarks; they were the district court's main focus throughout the hearing.

The district court opened by stating that "this is the most serious one I've ever had in front of me where someone returns illegally and then the new law violation is murder," and the court continued "I'm prepared to upwardly— vary upwardly depart and give you the five years.  You committed a murder.  I just don't know that it gets any worse than that."  The district court described the murder as "horrific," "[e]xtremely violent," and "the most serious allegation, new law violation that I've ever considered."  The district court suggested that Rivera's 28-year state prison sentence was not long enough because she would become eligible for parole after only 11 years.  These observations were the principal justifications that the district court offered for its above-Guidelines, maximum sentence, and the district court made only a passing reference to its "right to consider 3553 to determine what sentence is appropriate."  This case is different from *Walker*, in which the district court made a brief reference to an impermissible consideration when it pronounced the revocation sentence, and it did so only after it explicitly addressed several permissible considerations.  742 F.3d at 617.

Thus, the district court erred by making the seriousness of the murder and the need for just punishment dominant factors in Rivera's revocation

sentence. The district court's error was also plain. For a legal error to be "plain," it must be "clear or obvious, rather than subject to reasonable dispute." *Puckett v. United States*, 556 U.S. 129, 135 (2009). In light of *Miller*, there is no reasonable dispute as to whether a district court may rely upon the seriousness of the offense and the need for just punishment when sentencing a defendant for violation of the conditions of his supervised release. Congress's choice to prohibit district courts from relying on these considerations—which naturally and permissibly inform almost all other sentencing decisions—is admittedly quite strange for a sentencing scheme that generally views just punishment as an appropriate sentencing goal. *See* 18 U.S.C. § 3553(a)(2)(A). However, that Congress's command is counterintuitive does not make its command unclear. *Miller* plainly holds that under § 3583(e), district courts may not consider the seriousness of the offense or the need for just punishment when imposing a revocation sentence.

Not all plain errors are curable, however—this court may correct a plain error only if it "affected the appellant's substantial rights." *Puckett*, 556 U.S. at 135. "[I]n the ordinary case," this "means he must demonstrate that it affected the outcome of the district court proceedings." *Id.* (internal quotation marks omitted). "When the rights acquired by the defendant relate to sentencing, the outcome he must show to have been affected is his sentence." *Id.* at 142 n.4 (internal quotation marks omitted). "A sentencing error affects a defendant's substantial rights if he can show a reasonable probability that, but for the district court's [error], he would have received a lesser sentence." *United States v. John*, 597 F.3d 263, 284–85 (5th Cir. 2010) (internal quotation and alteration marks omitted).

Rivera's Guidelines range was 24–30 months, and the magistrate judge had recommended a sentence of 28 months. Instead, the district court sentenced her to 60 months—the statutory maximum—and it relied primarily

on the seriousness of the murder when it did so. Therefore, Rivera has shown a reasonable probability that, but for the district court's error, she would have received a lesser sentence.

Even if the first three prongs of plain-error review are satisfied, this does not end the analysis. Under the fourth prong, "the court of appeals has the *discretion* to remedy the error—discretion which ought to be exercised only if the error seriously affects the fairness, integrity or public reputation of judicial proceedings." *Puckett*, 556 U.S. at 135 (internal quotation and alteration marks omitted) (emphasis in original). The government did not brief the fourth prong. Nor did Rivera, except to argue that *Miller* error automatically warrants correction on plain-error review. We must reject this *per se* fourth-prong argument. Rivera's proffered approach would collapse the fourth prong into the first three and would contravene binding precedent that directs us to consider the facts of each case before finding that the fourth prong has been met.[2]

Thus, in asking us to exercise our discretion, Rivera points to nothing beyond the district court's error and the increase in her sentence that the error may have caused.[3] Even assuming that Rivera had made a fourth-prong

---

[2] *See Puckett*, 556 U.S. at 142 ("The fourth prong is meant to be applied on a case-specific and fact-intensive basis. We have emphasized that a *per se* approach to plain-error review is flawed.") (internal quotation marks omitted); *United States v. Olano*, 507 U.S. 725, 737 (1993) ("[A] plain error affecting substantial rights does not, without more, satisfy [the fourth prong], for otherwise the discretion afforded by Rule 52(b) would be illusory."); *United States v. Wooley*, 740 F.3d 359, 369 (5th Cir. 2014) ("This circuit has repeatedly emphasized that even when we find that the first three factors have been established, this fourth factor is not 'automatically satisfied.'") (quoting *United States v. Garza*, 706 F.3d 655, 663 (5th Cir. 2013)); *United States v. Ellis*, 564 F.3d 370, 378 (5th Cir. 2009) ("Not every error that increases a sentence need be corrected by a call upon plain error doctrine.").

[3] In the past, we have declined to remedy some errors that may have caused sentence increases. *See, e.g., United States v. Chavez–Hernandez*, 671 F.3d 494, 501 (5th Cir. 2012) (affirming an improperly enhanced sentence that exceeded the high end of the correct Guidelines range by 23 months); *United States v. Jones*, 489 F.3d 679, 682 (5th Cir. 2007)

argument other than a *per se* one, the facts here do not warrant correction of the error.  At the hearing on Rivera's supervised release revocation, in considering the proper sentence, the district court observed that Rivera was never charged with illegal reentry following deportation even though she had committed the crime.[4]  The district court further noted that an illegal reentry conviction would have resulted in a Guidelines range of 57–71 months.  Under the circumstances of this case, we cannot say that the district court's revocation sentence of 60 months impugns the fairness, integrity, or public reputation of the court system.

## IV.

Because Rivera failed to raise an objection in the district court and because we are not persuaded that the fourth prong of the plain-error standard has been met, we AFFIRM the judgment of the district court.

---

(affirming sentence where the district court had departed 23 months above the high end of the Guidelines range based on its improper consideration of the defendant's arrest record); *see also Ellis*, 564 F.3d at 378–79 ("[E]ven if an increase in a sentence be seen as inevitably 'substantial' in one sense it does not inevitably affect the fairness, integrity, or public reputation of judicial process and proceedings.").  We have also refused to correct plain errors when, as here, the complaining party makes no showing as to the fourth prong. *See, e.g.*, *United States v. Chavez–Trejo*, 533 F. App'x 382, 385–86 (5th Cir. 2013) (unpublished); *United States v. Saleh*, 257 F. App'x 740, 745 (5th Cir. 2007) (unpublished).

[4] This fact distinguishes Rivera's case from *United States v. Hudson*, 457 F. App'x 417 (5th Cir. 2012) (unpublished), upon which she relies for her argument that *Miller* error automatically warrants correction on plain-error review.  Of course, *Hudson* never held anything so broad; it merely concluded that all four prongs of the plain-error standard were met in that particular case. *Id.* at 419.  In any event, unlike in *Hudson*, the district court in this case also considered Rivera's uncharged conduct during the sentencing hearing.