# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 16-51425

United States Court of Appeals
Fifth Circuit

**FILED**

February 26, 2018

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

SERVANDO BENITEZ-REYNOSO

Defendant - Appellant

Appeal from the United States District Court
for the Western District of Texas
USDC No. 2:13-CR-1131-2

Before KING, ELROD, and GRAVES, Circuit Judges.

PER CURIAM:*

Defendant Servando Benitez-Reynoso was arrested on drug-trafficking charges. The Government knew he had a cellphone in his pocket when he was arrested, but, try as it might, it was unable to locate the phone. During a proffer session, Benitez-Reynoso told the Government where he concealed it, and the Government was finally able to retrieve the phone. After the parties' cooperation negotiations fell through, the Government tried to use the cellphone records against him at trial. Benitez-Reynoso cried foul. He argued

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 16-51425

that the use of the cellphone's contents at trial violated the parties' proffer agreement, which forbade the Government from using any statements he made during the proffer session to prove his guilt. But the district court held that the cellphone and its contents were "derivative" evidence that the Government could use against Benitez-Reynoso under the proffer agreement. On appeal, he contends that the Government violated the proffer agreement and the cellphone evidence should have been excluded. He also raises, for the first time on appeal, a challenge to his sentence. We find that the admission of the cellphone evidence, even if error, was harmless, and that Benitez-Reynoso's challenge to his sentence does not surmount the high bar of plain error. Accordingly, we AFFIRM his conviction and sentence.

## I.

## A.

Servando Benitez-Reynoso's uncle ran a drug trafficking organization that smuggled marijuana into the United States from Mexico. Benitez-Reynoso represented his uncle in the United States and directed the organization's operations here. A series of run-ins with law enforcement over an 11-month period led to Benitez-Reynoso's arrest, indictment, and, ultimately, conviction.

In September 2012, Austin police officers executed a warrant at a suspected marijuana "stash house." Inside the residence, officers found guns, large amounts of cash, drug paraphernalia, sales records, a small amount of marijuana, and—among it all—Benitez-Reynoso. Although there was little marijuana in the stash house, officers discovered over 100 kilograms of marijuana in a car parked across the street. Benitez-Reynoso was arrested, but the charges against him were dismissed.

Next, in February 2013, Brookshire police officers stopped Benitez-Reynoso and a passenger for speeding. They searched the car and uncovered

tens of thousands of dollars in cash inside. Benitez-Reynoso was again arrested and again released.

In July 2013, Benitez-Reynoso twice attracted the attention of the U.S. Customs and Border Patrol ("CBP"). On July 12, CBP agents found him standing next to another man trying to dig out a truck that had sunk into a dirt road after a flood. Suspicious of the two men, the agents followed footprints leading away from the truck for 200 yards to the Rio Grande. There, they saw a group of men across the river sitting on large duffel bags that the agents believed to contain marijuana. Despite the suspicious circumstances, they did not arrest Benitez-Reynoso at that time. On July 31, CBP agents were monitoring Benitez-Reynoso and his cousin Alejandro Benitez at a hotel in Eagle Pass. The cousins left the hotel separately in the morning. CBP agents later stopped Alejandro in Eagle Pass after he had picked up several hundred pounds of marijuana. At the same time, another CBP agent was shadowing Benitez-Reynoso. When CBP pulled over Alejandro, that agent saw Benitez-Reynoso make an abrupt U-turn, speed toward the scene of the stop, and drive by slowly. That led the agent to stop and arrest Benitez-Reynoso. He then frisked Benitez-Reynoso and felt a cellphone in his pocket, though he did not remove it at that time.

After the July 31 arrest, Benitez-Reynoso was taken to a CBP station for questioning. Unable to find Benitez-Reynoso's cellphone, an agent asked him where it was. Benitez-Reynoso responded that it was in the truck used to transport him, but CBP could not find it. CBP electronically tracked the phone to the transport truck, but, despite knowing that the phone was somewhere in the truck, CBP still could not unearth it.

**B.**

In August 2013, a grand jury returned a two-count indictment charging Benitez-Reynoso with possession of 100 kilograms or more of marijuana with

intent to distribute and conspiracy to do the same. *See* 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B), 846.

Shortly after his indictment, Benitez-Reynoso tried to strike a deal with the Government in exchange for his cooperation. In September 2013, the Government sent a letter to Benitez-Reynoso's counsel laying out the "ground rules" for an initial proffer to gauge the value of his cooperation. The letter, in relevant part, provided as follows:

> First, no statements made by your client during the "off the record" proffer will be used against your client in the case-in chief [sic] portion of a criminal case against your client. . . .
>
> Second, the Government may make derivative use of any investigative leads suggested by any statements made by your client. This provision is necessary in order to eliminate the necessity for a *Kastigar* hearing, wherein the Government would have the burden of proving the evidence was derived from a source independent of your client's statements.

Benitez-Reynoso and his counsel both signed the letter, indicating that they had "read the letter and underst[ood] and agree[d] to the terms contained [t]herein." During the proffer, Benitez-Reynoso explained that he hid the phone behind an air-conditioning vent in the truck used to transport him to the CBP station. Agents then tracked down the truck, dismantled the air-conditioning vent, and retrieved Benitez-Reynoso's phone.

## C.

The parties' negotiations fell through, and the case went to trial.

In April 2014, the Government secured a superseding indictment. That indictment increased the quantity of marijuana charged to 1000 kilograms or more, and charged Benitez Reynoso with bulk cash-smuggling and conspiracy to do the same. *See* 31 U.S.C. § 5332; 18 U.S.C. § 371.

Before trial, Benitez-Reynoso sought to exclude any evidence recovered from the cellphone. He filed a motion in limine arguing that the Government's

use of such evidence would violate the proffer agreement. In response, the Government argued that the proffer agreement only protected Benitez-Reynoso's statements and not evidence found as a result of those statements. The district court ultimately determined that the use of the statements to find the cellphone was "quintessentially a derivative use." As a result, it denied Benitez-Reynoso's motion in limine. The court later denied Benitez-Reynoso's motion for a mistrial based on the introduction of evidence from the cellphone.

The trial lasted three days. The Government presented testimony from four of Benitez-Reynoso's coconspirators, all of whom implicated him in marijuana smuggling. State and federal law enforcement officers testified about Benitez-Reynoso's multiple run-ins with law enforcement. And the Government presented documentary evidence connecting Benitez-Reynoso to several marijuana- and cash-smuggling incidents, including some of the information found on his cellphone. The jury returned guilty verdicts on the drug counts and not guilty verdicts on the cash-smuggling counts. Benitez-Reynoso moved for a post-verdict judgment of acquittal based on the sufficiency of the evidence. The court denied his motion.

## D.

Benitez-Reynoso's presentence report ("PSR") assessed an offense level of 40 and criminal history category of I. That yielded a recommended sentence of 292 to 365 months' incarceration. As relevant to this appeal, the PSR concluded that Benitez-Reynoso was not eligible for an adjustment for acceptance of responsibility because he pleaded not guilty and denied his factual guilt at trial. Benitez-Reynoso did not object to that paragraph. The court ultimately reduced the offense level to 39, resulting in a recommended sentence of 262 to 327 months' incarceration. The court concluded that a downward departure was warranted and sentenced Benitez-Reynoso to

No. 16-51425

concurrent sentences of 210 months' incarceration on the two counts of conviction. Benitez-Reynoso now appeals his conviction and sentence.

## II.

Benitez-Reynoso first argues that the district court erred by admitting electronic records from the cellphone at trial. He contends that the Government's use of these records during its case-in-chief violated the proffer agreement. According to Benitez-Reynoso, his statement during the proffer was not a mere "investigative lead," but instead told the Government exactly where to find the cellphone. Further, in his view, the cellphone has no evidentiary value apart from its contents. Thus, he contends that the contents are not "derivative" evidence.

The Government, by contrast, argues that the immunity granted in the proffer agreement was narrow: it only forbade using Benitez-Reynoso's proffer statements to prove his guilt. In this case, the Government contends that it merely used Benitez-Reynoso's statement as an "investigative lead" to track down his cellphone. In the Government's view, its use of the cellphone records at trial was derivative.

We need not resolve this dispute because, even if it was error to admit the cellphone records at trial, any such error was harmless.

## A.

On appeal, we must disregard "[a]ny error, defect, irregularity, or variance that does not affect substantial rights." Fed. R. Crim. P. 52(a). Benitez-Reynoso argues that the Government violated a contractual, not constitutional, right. Thus, any error in admitting the cellphone evidence is harmless unless "there is a reasonable probability that the improperly admitted evidence contributed to the conviction." *United States v. Lewis*, 774 F.3d 837, 844 (5th Cir. 2014) (per curiam) (quoting *United States v. Heard*, 709 F.3d 413, 422 (5th Cir. 2013)); *see United States v. Lowery*, 135 F.3d 957, 959

6

No. 16-51425

(5th Cir. 1998) (per curiam) (characterizing inquiry as whether the error had a "substantial and injurious effect or influence" on the verdict (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946))). This court makes that assessment in light of all the evidence introduced at trial. *See United States v. El-Mezain*, 664 F.3d 467, 526 (5th Cir. 2011). "It is well established that error in admitting evidence will be found harmless when the evidence is cumulative, meaning that substantial evidence supports the same facts and inferences as those in the erroneously admitted evidence." *Id.* (collecting authorities).

## B.

Assuming without deciding that it was error to admit the cellphone records, any such error was harmless. Benitez-Reynoso argues that the Government used the cellphone records to show close coordination between him and his coconspirators. In actuality, the Government made limited use of the cellphone records at trial. And the Government put forward substantial evidence beyond the cellphone records to show the close coordination between Benitez-Reynoso and each of his coconspirators. That evidence rendered the cellphone records "cumulative" and their admission harmless. *See id.*

The Government introduced the cellphone records largely through FBI Special Agent Jarrett Doss.[1] The district court admitted six photographs of various records on the phone into evidence. Those records linked Benitez-Reynoso to three coconspirators: Poppy Dossat, Alejandro Benitez, and Nicholas Dush.

The Government first established that the cellphone belonged to Benitez-Reynoso. It showed Doss a screenshot with the caption "My Number." Doss verified that the cellphone and the number were Benitez-Reynoso's.

---

[1] The day before Doss testified, the Government had introduced one photograph showing the cellphone's number only in order to establish that the cellphone found in the CBP truck belonged to Benitez-Reynoso.

7

No. 16-51425

Two photographs of the cellphone's call history showed multiple calls with a contact named "Poppy," including one on July 31, 2013, the day CBP arrested Benitez-Reynoso. Another photograph showed three contacts from the cellphone's address book, including "Poppy." Doss identified "Poppy" as Poppy Dossat. He described Poppy Dossat "as a person who has rented vehicles for the Xavier Benitez organization."[2] The Government went on to show Doss a screenshot of a text message from "Poppy" on July 31, 2013, though the contents of the text message were hidden. Doss testified that, in all, Poppy and Benitez-Reynoso exchanged 52 calls and text messages between July 28 and 31, 2013.

The Government also used the cellphone to show contact between Benitez-Reynoso and his cousin Alejandro. The Government showed Doss a photograph of three contacts in the cellphone's address book, including one named "Alex." Doss testified that "Alex" was Alejandro Benitez. Doss went on to explain that he discovered over 200 calls between Benitez-Reynoso and Alejandro from July 28 to 31, 2013. Doss had compared Benitez-Reynoso's phone to Alejandro's and found that some contacts between the two did not appear on Benitez-Reynoso's phone. According to Doss, those contacts had been "deleted" from Benitez-Reynoso's phone.[3]

Finally, the Government used Doss's testimony to establish contact between Benitez-Reynoso and two coconspirators on July 12, 2013, the date of his first run-in with CBP. Doss testified that between July 9 and 12, 2013, there were roughly 61 calls and text messages between Benitez-Reynoso and Nicholas Dush, the man he was found with on July 12. During that same time

---

[2] Alejandro Benitez testified that "Poppy" had rented the truck that he and Benitez-Reynoso used to smuggle marijuana on July 31, 2013.

[3] Defense counsel did not object to Doss's characterization of the records as "deleted."

period, Doss testified that there were about 40 calls and text messages between Benitez-Reynoso and Poppy Dossat.

This evidence did give the impression of close coordination between Benitez-Reynoso and several of his coconspirators. But the jury would have gotten that impression anyway. The Government presented significant evidence beyond the cellphone records that established Benitez-Reynoso's close coordination with Alejandro, Dossat, and Dush.

First, as we have already explained above, Doss examined Alejandro's phone. He told the jury that after July 28, 2013, there were very few calls or text messages on Benitez-Reynoso's phone. However, he was able to identify over 200 calls and text messages between Alejandro and Benitez-Reynoso based on records downloaded from Alejandro's phone. *Cf. United States v. Escamilla*, 852 F.3d 474, 486–87 (5th Cir.) (finding error in admitting illegally obtained cellphone records harmless where the Government introduced evidence from another, legally obtained phone showing reciprocal contacts), *cert. denied*, 138 S. Ct. 336 (2017). Because information had been deleted from Benitez-Reynoso's phone, Alejandro's phone actually showed more extensive contact between the two. And Doss was not the only witness the Government brought forward to show the close contact between Benitez-Reynoso and Alejandro. Alejandro himself testified. He told the jury that he stayed in close contact with Benitez-Reynoso during the July 31 smuggling attempt and that he called Benitez-Reynoso after he loaded the marijuana into his truck.

Second, other testimony and documentary evidence connected Benitez-Reynoso to Dossat. Doss testified that he had interviewed Dossat and that she regularly rented vehicles for the Xavier Benitez organization. He testified that she had rented the trucks that Nicholas Dush was digging out of the dirt road on July 12 and that Alejandro Benitez was driving on July 31. The Government introduced vehicle rental records to substantiate that testimony.

No. 16-51425

Third, CBP agents testified that they found Benitez-Reynoso standing at the front of the truck that Dush was trying to dig out of the dirt road. Benitez-Reynoso told the agents that he was driving by looking for work in an oil field and stopped to help. But that story proved implausible. Benitez-Reynoso was not helping Dush in any way and would not have been able to see the truck from where he claimed he was driving. Nor was there any oil field work in the area. When the agents tried to speak to Dush, Benitez-Reynoso repeatedly interrupted and tried to answer for Dush. Furthermore, documentary evidence established that Dossat rented the truck Dush was trying to free from the same rental company in Austin that she used to rent the truck Alejandro drove on July 31—and from which Benitez-Reynoso had also rented vehicles on occasion.

In short, the Government's use of the cellphone records at trial was limited and largely cumulative of other evidence not challenged on appeal. There was significant evidence beyond the cellphone records to show the close coordination and numerous contacts between Benitez-Reynoso and his coconspirators during the July 12 and 31 incidents. Accordingly, even if it was error to admit the cellphone records, that error was harmless.

## III.

Benitez-Reynoso next contends that he should have received credit at sentencing for acceptance of responsibility. *See* U.S.S.G. § 3E1.1(a).

## A.

Benitez-Reynoso concedes that he did not request an acceptance-of-responsibility adjustment in the district court. As a result, our review is for plain error. *See* Fed. R. Crim. P. 52(b); *United States v. Mondragon-Santiago*, 564 F.3d 357, 361 (5th Cir. 2009). Benitez-Reynoso must demonstrate a plain error that affected his substantial rights. *See id.* In order for an error to be plain, it must be obvious and beyond reasonable dispute. *See Puckett v. United*

*States*, 556 U.S. 129, 135 (2009) (citing *United States v. Olano*, 507 U.S. 725, 734 (1993)). An error generally affects substantial rights only if it affected the outcome of the district court proceedings. *See id.* (quoting *Olano*, 507 U.S. at 734). Even if Benitez-Reynoso can satisfy these requirements, we retain discretion to remedy the error. *See id.* (quoting *Olano*, 507 U.S. at 736). A forfeited error will be corrected only if it "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." *Id.* (alteration in original) (quoting *Olano*, 507 U.S. at 736). This is a "stringent and difficult" standard. *See United States v. Escalante-Reyes*, 689 F.3d 415, 422 (5th Cir. 2012) (en banc).

## B.

As an initial matter, Benitez-Reynoso failed to brief the final two elements of the plain error standard. Benitez-Reynoso had the burden of proving each element of plain error. *See United States v. Ruiz-Arriaga*, 565 F.3d 280, 282–83 (5th Cir. 2009). His failure to argue the final two elements alone justifies affirming his sentence. *See, e.g.*, *United States v. Caravayo*, 809 F.3d 269, 273 (5th Cir. 2015) (per curiam) ("We have . . . refused to correct plain errors when, as here, the complaining party makes no showing as to the fourth prong." (alteration in original) (quoting *United States v. Rivera*, 784 F.3d 1012, 1018 n.3 (5th Cir. 2015))).

Even considering his argument on the merits, it fails. The Sentencing Guidelines presume that a defendant who goes to trial will be ineligible for an adjustment for acceptance of responsibility. *See* U.S.S.G. § 3E1.1, comment. (n.2). But in "rare situations," a defendant may be eligible for the adjustment despite electing to go to trial. *Id.* The Guidelines give just one example of such a situation: "where a defendant goes to trial to assert and preserve issues that do not relate to factual guilt (e.g., to make a constitutional challenge to a

11

statute or a challenge to the applicability of a statute to his conduct)."[4] *Id.* Even so, a defendant who goes to trial to preserve an issue unrelated to factual guilt is not entitled to the adjustment if the defendant *also* disputes factual guilt, *see United States v. Rudzavice*, 586 F.3d 310, 316–17 (5th Cir. 2009), or tries to prove an affirmative defense, *see United States v. Spires*, 79 F.3d 464, 467 (5th Cir. 1996). But a defendant who goes to trial merely to preserve an issue unrelated to factual guilt must still prove entitlement to the adjustment. That entitlement depends solely on the defendant's "pre-trial statements and conduct," not the defendant's post-conviction expressions of remorse. *See* U.S.S.G. § 3E1.1, comment. (n.2).

Benitez-Reynoso claims the district court erred by ruling that he was categorically ineligible for the adjustment because he went to trial. Such a ruling would indeed be erroneous, as the Guidelines themselves contemplate that defendants who go to trial will sometimes be eligible for the adjustment. *See* U.S.S.G. § 3E1.1, comment. (n.2); *United States v. Fells*, 78 F.3d 168, 171–72 (5th Cir. 1996). Yet, the district court made no such error because Benitez-Reynoso never requested the adjustment. He instead points to a paragraph in the PSR that merely concluded that he was ineligible because he went to trial and denied his factual guilt. But the PSR concluded that he was ineligible because he both went to trial *and* disputed his factual guilt—a conclusion

---

[4] *Compare, e.g.*, *United States v. Sam*, 467 F.3d 857, 863–64 (5th Cir. 2006) (holding that insanity and other "affirmative defenses ordinarily challenge factual guilt and therefore make a defendant ineligible for an acceptance-of-responsibility reduction"), *and United States v. Cordero*, 465 F.3d 626, 631 (5th Cir. 2006) (holding that defendant who went to trial to preserve suppression issue but did not stipulate to all facts necessary for conviction was not entitled to adjustment), *with United States v. Washington*, 340 F.3d 222, 230 (5th Cir. 2003) (holding that defendant was eligible for adjustment where he went to trial only to preserve suppression issue, waived jury trial, and stipulated to all facts necessary for conviction), *and United States v. Fells*, 78 F.3d 168, 171–72 (5th Cir. 1996) (holding that defendant was eligible for adjustment where he "admitted the operative facts from the beginning" and went to trial solely to challenge venue).

consistent with the relevant Guidelines section and the caselaw interpreting it. *See, e.g.*, *Rudzavice*, 568 F.3d at 316–17.

Moreover, Benitez-Reynoso would not have been entitled to the adjustment even if he had requested it. At trial, his sole defense was that the Government could not prove his guilt beyond a reasonable doubt. He sought to undermine the credibility of the Government's cooperating witnesses, characterizing them as "snitches" and "liars" who struck deals in exchange for their testimony. After the jury delivered its verdict, Benitez-Reynoso moved for a judgment of acquittal based on the sufficiency of the evidence. Benitez-Reynoso's repeated denials of guilt throughout the trial would be sufficient to affirm his sentence even if plain error review did not apply. *Cf. Rudzavice*, 586 F.3d at 316–17 (affirming sentence where defendant "moved for a judgment of acquittal at the end of the trial on the grounds that there was insufficient evidence to establish the elements of the offense"); *United States v. Cordero*, 465 F.3d 626, 631–32 (5th Cir. 2006) (holding that district court did not abuse its discretion by refusing to award an acceptance-of-responsibility reduction where defendant moved for judgment of acquittal based on sufficiency of the evidence).

None of Benitez-Reynoso's arguments to the contrary compels a different result. He argues that he faced a "cruel Hobson's choice" in pleading guilty because it was impossible to plead guilty to the drug charges without also pleading guilty to the cash-smuggling charges, of which he was acquitted. There are multiple problems with this argument. The Government did not obtain the superseding indictment until April 2014. Benitez-Reynoso could have pleaded guilty to the original indictment, which did not charge him with cash smuggling and alleged lesser quantities of marijuana. Besides, there is no requirement that a defendant plead guilty to the entire indictment. *See, e.g.*, *United States v. Neal*, 509 F. App'x 302, 308–09 (5th Cir. 2013); *United States*

*v. Johnson*, 89 F.3d 778, 783 (11th Cir. 1996), *abrogation on other grounds recognized by United States v. Davila*, 569 U.S. 597 (2013). The district court even offered to allow Benitez-Reynoso to plead guilty to the drug charges at sentencing and told him that it would consider an "equitable argument" for acceptance of responsibility. He declined to take the court up on that offer and cannot now complain on appeal that he was denied the opportunity to plead guilty.

Benitez-Reynoso further contends that his assistance in finding his cellphone warrants an adjustment. Whatever the value of his cooperation, it does not offset his repeated denials of guilt at trial, which rendered him ineligible for the adjustment. *See* U.S.S.G. § 3E1.1, comment. (n.2); *cf. Rudzavice*, 586 F.3d at 316 (holding that district court properly denied adjustment even though defendant cooperated with police twice before he was indicted). And Benitez-Reynoso's later efforts to obstruct justice undercut any argument that his early cooperation merits an adjustment. Except in "extraordinary cases," a defendant who obstructs justice is ineligible for an acceptance-of-responsibility adjustment. U.S.S.G. § 3E1.1, comment. (n.4). Here, the district court found at sentencing that Benitez-Reynoso told his sister not to cooperate with authorities and to hide a gun. His early assistance in finding his cellphone—evidence he deliberately concealed from the Government after being arrested—is not so obviously "extraordinary" as to qualify him for an acceptance of responsibility adjustment despite his obstruction of justice.

Thus, we find no error—plain or otherwise—in the district court's denial of an adjustment for acceptance of responsibility.

## IV.

For the foregoing reasons, we AFFIRM Benitez-Reynoso's conviction and sentence.