# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 16-41267

United States Court of Appeals
Fifth Circuit

**FILED**

January 12, 2018

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff–Appellee,

v.

PAUL SUAREZ,

Defendant–Appellant.

Appeal from the United States District Court
for the Eastern District of Texas

Before SMITH, OWEN, and HIGGINSON, Circuit Judges.

PRISCILLA R. OWEN, Circuit Judge:

A jury convicted Paul Suarez for his involvement in a drug trafficking conspiracy and for firearms offenses. Suarez appeals contending that the convictions were not supported by sufficient evidence. He also asserts that the district court erred in imposing a 120-month (ten year) mandatory minimum prison sentence for possession of a sawed-off shotgun in furtherance of a drug trafficking crime. The evidence was sufficient to sustain each of Suarez's convictions, and they are affirmed. But that the mandatory minimum sentence of 120 months of imprisonment was inapplicable, and we therefore vacate the sentence and remand to the district court for resentencing.

No. 16-41267

## I

After discovering methamphetamine in Timothy Sharp's truck during the course of a traffic stop, Cooke County Police obtained a warrant to search the residence of Erica Gutierrez, from whom Sharp said he purchased the drugs. When police searched Gutierrez's home, they found her and Paul Suarez—who, according to Sharp, acted as "consul or overseer" for Gutierrez's drug deals—in the master bedroom. Also found in that room were a distributable amount of methamphetamine, baggies, scales, security cameras, a .380 caliber Davis pistol, shotgun shells, body armor, and a .20 gauge Winchester sawed-off shotgun that, though disassembled, had ammunition in its chamber. Police also found a .20 gauge Ithaca sawed-off shotgun underneath a mattress in a second bedroom. During the search, officers answered a call to Gutierrez's cell phone from Travis Puckett, who wanted to buy methamphetamine. Puckett agreed to meet at a local hotel, and he was arrested when he arrived there to consummate the transaction.

Gutierrez and Puckett were witnesses at Suarez's trial. Gutierrez testified that Suarez distributed methamphetamine and split the profits with her, had stayed at the house the previous night, gave her the pistol, and knew about the Winchester but not the Ithaca. Puckett testified that Suarez was often present when he bought methamphetamine from Gutierrez and that Suarez made the sale if Gutierrez was unavailable. Puckett also testified that the Ithaca, which he identified by the tape on its handle, was "always" in the master bedroom when he made purchases there.

Count I of the indictment charged Suarez with conspiracy to possess with intent to distribute narcotics in violation of 21 U.S.C. § 846. Count II charged possession of the pistol and Winchester shotgun in furtherance of a drug trafficking offense in violation of 18 U.S.C. § 924(c). Counts III and IV alleged possession of the unregistered Winchester and Ithaca shotguns in violation of

2

No. 16-41267

26 U.S.C. § 5861(d).  Suarez moved for acquittal on Counts III and IV under Federal Rule of Criminal Procedure 29, but the district court denied the motion.  The proposed jury charge and verdict form for Count II did not require the jury to specify which firearm—the pistol or the Winchester—supported guilt on Count II, and Suarez did not object at trial.

The jury found Suarez guilty on all four counts.  The Presentence Investigation Report (PSR) recommended 60 months of imprisonment for Counts I, III, and IV and concluded that Count II required a ten-year minimum prison sentence, to run consecutively to any other counts.  The district court adopted the recommendation and sentenced Suarez to 180 months of imprisonment, but stated on the record that it would have sentenced Suarez to a shorter term but for the ten-year mandatory minimum sentence that it had concluded was applicable.  This appeal followed.

## II

The standard of review for insufficiency-of-the-evidence claims depends on whether the claims were preserved.  We review claims preserved through a Rule 29 motion de novo, but "with substantial deference to the jury verdict."[1] We affirm "if a reasonable trier of fact could conclude . . . the elements of the offense were established beyond a reasonable doubt."[2]  Claims not preserved are reviewed for plain error.[3]  Suarez must show a clear or obvious legal error that affects his substantial rights and "seriously affect[s] the fairness, integrity, or public reputation of the judicial proceedings."[4]  In reviewing the

---

[1] *United States v. Delgado*, 672 F.3d 320, 330-31 (5th Cir. 2012) (en banc).

[2] *United States v. McDowell*, 498 F.3d 308, 312 (5th Cir. 2007) (quoting *United States v. Ragsdale*, 426 F.3d 765, 770-71 (5th Cir. 2005)).

[3] *See Delgado*, 672 F.3d at 330.

[4] *Puckett v. United States*, 556 U.S. 129, 135 (2009) (alteration in original) (quoting *United States v. Olano*, 507 U.S. 725, 736 (1993)).

sufficiency of the evidence, an error is "clear or obvious" "only if the record is 'devoid of evidence pointing to guilt,' or . . . 'the evidence on a key element of the offense [i]s so tenuous that a conviction would be shocking.'"[5] Relief is appropriate under this exacting standard only if the Government's evidence is "*obviously* insufficient"[6] and the defendant shows "a manifest miscarriage of justice."[7] Under both standards, we "view[] the evidence in the light most favorable to the verdict and draw[] all reasonable inferences from the evidence to support the verdict."[8]

## A

We review the conviction under Count I for plain error.[9] Count I charged Suarez with conspiracy to distribute, and possession with intent to distribute, 50 grams or more of a mixture or substance containing a detectable amount of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and 846. Defense counsel conceded that the evidence supported conviction under this count, and we agree that the evidence was sufficient.

To prove a drug conspiracy, the Government must prove (1) an agreement between two or more persons to violate narcotics laws; (2) knowledge of the agreement; and (3) voluntarily participation in the agreement.[10] Gutierrez's testimony alone provides sufficient evidence to establish all three elements. "A conviction, especially one accompanied by an

---

[5] *McDowell*, 498 F.3d at 312 (alteration in original) (quoting *United States v. Knezek*, 964 F.2d 394, 400 n.14 (5th Cir. 1992)); *see also Delgado*, 672 F.3d at 330-31 (reaffirming these standards as "proper applications of the plain-error test to claims of evidentiary insufficiency").

[6] *Delgado*, 672 F.3d at 331 (emphasis in original).

[7] *McDowell*, 498 F.3d at 312; *see also Delgado*, 672 F.3d at 330-31 (explaining that the "manifest miscarriage of justice" standard relates to whether the verdict undermines the fairness, integrity, or reputation of the proceedings).

[8] *McDowell*, 498 F.3d at 312.

[9] *See Delgado*, 672 F.3d at 330.

[10] *United States v. Gallo*, 927 F.2d 815, 820 (5th Cir. 1991).

accomplice instruction, may be sustained on the uncorroborated testimony of an accomplice so long as 'the testimony is not incredible or otherwise insubstantial on its face.'"[11]   The district court gave the jury an accomplice instruction.   Gutierrez testified that Suarez assisted her in selling methamphetamine and divided the proceeds with her.   Her testimony is neither incredible nor insubstantial on its face.

Gutierrez's testimony was not the only evidence of Suarez's involvement in the drug distribution conspiracy.  Officers testified that they found Suarez in the master bedroom with Gutierrez and that the bedroom contained a distributable quantity of methamphetamine, packing and weighing materials, security cameras, guns, and body armor.  Puckett testified that Suarez was usually present when he bought drugs from Gutierrez, Suarez had answered Gutierrez's phone before, and Puckett went to the hotel where he was arrested because he assumed the male officer who answered Gutierrez's phone was Suarez.  Suarez argues that Gutierrez and Puckett are unreliable witnesses, but we generally "will not disturb (the jury's) verdict [or] weigh the credibility of witnesses."[12]  The record is not "devoid of evidence pointing to guilt," nor is the evidence "so tenuous that a conviction is shocking."[13]

## B

We also review the conviction on Count II for plain error.  Count II charged Suarez with violating 18 U.S.C. § 924(c) by possessing firearms in furtherance of a drug trafficking crime.  The firearms identified in Count II

---

[11] *United States v. Arledge*, 553 F.3d 881, 888 (5th Cir. 2008) (quoting *United States v. Osum*, 934 F.2d 1394, 1405 (5th Cir. 1991)).

[12] *Id.* (alteration in original) (quoting *United States v. Garner*, 581 F.2d 481, 485 (5th Cir. 1978)).

[13] *See United States v. Phillips*, 477 F.3d 215, 219 (5th Cir. 2007) (quoting *United States v. Avants*, 367 F.3d 433, 449 (5th Cir. 2004)).

No. 16-41267

were the sawed-off Winchester .20 gauge shotgun and the Davis .380 caliber pistol.

To support a conviction for possession of a firearm in furtherance of a drug trafficking crime, the Government must prove that Suarez had either actual or constructive possession of a firearm[14] and that the possession "further[ed], advance[d], or help[ed] forward" the drug trafficking offense.[15] The following non-exclusive factors are relevant to determining whether possession is "in furtherance" of a drug trafficking crime: (1) the type of drug activity conducted; (2) the accessibility of the firearm; (3) the type of firearm; (4) whether the firearm is stolen; (5) the legality of the possession; (6) whether the gun is loaded; (7) the proximity of the weapon to the drugs; and (8) the time and circumstances under which the firearm is found.[16] "The mere presence of a firearm" is insufficient.[17]   When evidence of more than one firearm is presented to the jury to support a single count under 18 U.S.C. § 924(c)(1)(A), the jury is not required to agree unanimously on which weapon the defendant possessed.[18]

On plain error review, we conclude that the record is sufficient to sustain the conviction under § 924(c)(1)(A), and the consequent imposition of a five-year mandatory minimum sentence under § 924(c)(1)(A)(i).   The indictment alleged that "[o]n or about February 4, 2015," the date that the search warrant

---

[14] *See United States v. Cardenas*, 748 F.2d 1015, 1019 (5th Cir. 1984).

[15] *United States v. Walker*, 828 F.3d 352, 354 (5th Cir. 2016) (quoting *United States v. Palmer*, 456 F.3d 484, 489-90 (5th Cir. 2006)).

[16] *Id.* at 354-55 (quoting *Palmer*, 456 F.3d at 490); *see also United States v. Smith*, __ F.3d __, ___, 2017 WL 6616805, at *3 (5th Cir. 2017).

[17] *Walker*, 828 F.3d at 354.

[18] *See United States v. Correa-Ventura*, 6 F.3d 1070, 1087 (5th Cir. 1993). *But see id.* at 1087 n.35 (noting that verdict specificity may be necessary for a court to impose the appropriate penalty); *cf. United States v. Campbell*, 775 F.3d 664, 669 (5th Cir. 2014) (explaining that multiple counts under § 924(c) may require the government to prove, and the jury to find, that the defendant possessed more than one firearm, but finding no plain error in not so instructing the jury).

was executed, Suarez possessed the Winchester shotgun and the Davis .380 caliber pistol in furtherance of a drug trafficking crime.

There is some question as to whether the Winchester shotgun could function as a firearm at the time it was found in the master bedroom. The shotgun was partially disassembled and was in three pieces. The stock was not connected and was lying on the floor under the bed. The portion of the shotgun that contained a shell was in a black bag under the mattress, and the top piece of the shotgun was along the bed rail. The testimony at trial was that in this disassembled condition, the weapon could be fired but that it would not be safe to do so because "[t]here's not a very good spot to hold onto the shotgun unless you're holding near the breach." There was "a possibility, a very distinct one" that "if you had made an attempt to fire that weapon, you probably would have injured yourself." There was no evidence as to how quickly the Winchester could have been re-assembled. Nevertheless, we cannot say that "the record is 'devoid of evidence pointing to guilt,' or . . . 'the evidence on a key element of the offense [i]s so tenuous that a conviction would be shocking'"[19] had the jury based its verdict on the Winchester shotgun.

In any event, both the Winchester and the pistol were in the same room as, and accessible to, Suarez when the police found him, as were the drugs and distribution paraphernalia, surveillance equipment, and body armor. Gutierrez testified that Suarez knew about the Winchester and that he gave her the pistol. Suarez was an overnight guest at the house. Officer Benavides testified that Sharp identified Suarez as "consul" for Gutierrez and stated that

---

[19] *United States v. McDowell*, 498 F.3d 308, 312 (5th Cir. 2007) (alteration in original) (quoting *United States v. Knezek*, 964 F.2d 394, 400 n.14 (5th Cir. 1992)); *see also United States v. Delgado*, 672 F.3d 320, 330-31 (5th Cir. 2012) (en banc) (reaffirming these standards as "proper applications of the plain-error test to claims of evidentiary insufficiency").

No. 16-41267

Suarez would sit with a firearm during drug deals.  Another officer testified that Suarez's role as a "male overseer" to Gutierrez was typical in drug deals.

The jury was entitled to credit this evidence and testimony and find that Suarez actively assisted Gutierrez in her drug trafficking operations.  There is support for the jury's conclusion that Suarez possessed at least one of the two firearms found in the master bedroom and that such possession furthered the drug trafficking crimes.[20]

Suarez also challenges his conviction on Count II based on the failure of the district court to require that the jury unanimously determine which firearm formed the basis of the conviction.  Because he did not object to the instruction at trial, we review for plain error.[21]  We have previously approved of the pattern jury instruction given at trial as a correct statement of the law.[22]  We have also held that the jury need not unanimously agree on which firearm supports the conviction for this offense.[23]  For purposes of a conviction under 18 U.S.C. § 924(c)(1)(A), whether a defendant used a particular firearm pertains to the means by which the crime was committed, and therefore a jury is not required to determine unanimously that a particular firearm was used

---

[20] *See, e.g.*, *United States v. Zamora*, 661 F.3d 200, 210-11 (5th Cir. 2011) (determining evidence was sufficient to show defendant possessed a handgun in furtherance of a drug trafficking crime; handgun was found in defendant's residence, easily accessible, and loaded, and drugs were found in defendant's car); *United States v. Holley*, 831 F.3d 322, 329-30 (5th Cir. 2016) (determining evidence was sufficient to show defendant possessed a firearm in furtherance of a drug trafficking crime because the gun was located near the defendant, a large caliber and  semi-automatic, possessed illegally, was near cash, and in the same house as distributable quantify of drugs).

[21] *United States v. Fuchs*, 467 F.3d 889, 900 (5th Cir. 2006) ("[J]ury instructions that were not objected to are reviewed for plain error.").

[22] *See United States v. Montes*, 602 F.3d 381, 386-87 (5th Cir. 2010).

[23] *United States v. Correa-Ventura*, 6 F.3d 1070, 1087 (5th Cir. 1993); *see also United States v. O'Brien*, 560 U.S. 218, 235 (2010) (holding that the status of a firearm as a machine gun is an element, rather than a sentencing factor when used to support an enhanced sentence, but upholding a guilty plea by the defendants to a violation of § 924(c) that listed three different firearms).

No. 16-41267

when an indictment charges that more than one firearm was possessed.[24] This is distinct from what is required to impose a statutory minimum sentence under § 924(c)(1)(B)(i), as we will discuss below.[25] Possession of a particular type of firearm is an element of the offense for purposes of the statutory ten-year minimum sentence but not for a conviction of possession of a firearm in furtherance of drug trafficking crime.[26] The district court therefore did not err in failing to instruct the jury to specify upon which firearm it based the conviction under § 924(c)(1)(A). While the jury instruction does not affect the validity of Suarez's conviction, it does affect the validity of his sentence, as we consider in section III.

## C

Because Suarez properly preserved his challenge to the verdicts on Counts III and IV, we review the convictions on those counts de novo.[27] On a sufficiency-of-the-evidence challenge, however, de novo review permits us to evaluate only the reasonableness of the jury's verdict, and not whether we believe that verdict was correct.[28] Counts III and IV charged Suarez with possession of unregistered firearms—the Winchester and the Ithaca—in violation of 26 U.S.C. § 5861(d). "[P]ossession may be actual or constructive."[29]

---

[24] *See generally Richardson v. United States*, 526 U.S. 813, 817 (1999) ("Where, for example, an element of robbery is force or the threat of force, some jurors might conclude that the defendant used a knife to create the threat; others might conclude he used a gun. But that disagreement—a disagreement about means—would not matter as long as all 12 jurors unanimously concluded that the Government had proved the necessary related element, namely, that the defendant had threatened force.").

[25] *See generally Alleyne v. United States*, 133 S. Ct. 2151, 2160-63 (2013).

[26] *See id.* at 2162 ("[B]ecause the fact of brandishing aggravates the legally prescribed range of allowable sentences, it constitutes an element of a separate, aggravated offense that must be found by the jury.").

[27] *United States v. Grant*, 683 F.3d 639, 642 (5th Cir. 2012).

[28] *United States v. Redd*, 355 F.3d 866, 872 (5th Cir. 2003).

[29] *United States v. Mergerson*, 4 F.3d 337, 348 (5th Cir. 1993).

No. 16-41267

Constructive possession is established when the evidence supports "a plausible inference that the defendant had knowledge of and access to the weapon or contraband."[30]

Police found parts of the Winchester in plain sight and close proximity to Suarez, who was an overnight guest in the house.[31]   Gutierrez and Benavides testified that Suarez knew of the Winchester and sometimes carried a sawed-off shotgun during drug deals.  The Government therefore met its burden to establish constructive possession.

The evidence is also sufficient to support the conviction as to Count IV, involving the Ithaca.  Puckett testified that Suarez was usually at the house when Puckett purchased drugs and that the Ithaca shotgun was "always" by the dresser in the master bedroom.  Though Gutierrez testified that neither she nor Suarez knew the Ithaca shotgun was in the house, a reasonable jury could have credited Puckett's testimony over Gutierrez's.[32]   Puckett's testimony supports an inference of constructive possession.[33]

## III

Congress has determined that if a person possessed "a short-barreled rifle, short-barreled shotgun, or semiautomatic assault weapon," in committing a crime defined in 18 U.S.C. § 924(c), "the person shall be sentenced to a term of imprisonment of not less than 10 years."[34]   Suarez challenges the district

---

[30] *Id.* at 349.

[31] *Cf. United States v. Zamora*, 661 F.3d 200, 210-11 (5th Cir. 2011) (evidence sufficient to show defendant possessed a handgun in furtherance of a drug trafficking crime when handgun was found in defendant's residence).

[32] *See United States v. Arledge*, 553 F.3d 881, 888 (5th Cir. 2008); *see also United States v. Sinclair*, 438 F.2d 50, 52-53 (5th Cir. 1971) (noting that, even when the conviction rests on "the testimony of convicts," "the verdict of a jury must be sustained if there is substantial evidence, taking the view most favorable to the government, to support it" (quoting *Glasser v. United States*, 315 U.S. 60, 80 (1942))).

[33] *See Mergerson*, 4 F.3d at 349.

[34] 18 U.S.C. § 924(c)(1)(B)(i).

court's imposition of a consecutive 120-month (ten-year) mandatory minimum sentence under § 924(c)(1)(B)(i) as to Count II. Because he failed to object to the imposition of this mandatory minimum sentence in the district court, we review for plain error.[35] A sentencing error is plain if it is contrary to Supreme Court or circuit precedent.[36] The error affects substantial rights if "there is 'a reasonable probability that, but for the error, [the defendant] would have received a lesser sentence.'"[37] We may exercise our discretion to remand for resentencing if "the error 'seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.'"[38] The Government concedes plain error and, in its brief, did not oppose remand. At oral argument, the Government affirmatively urged this court to remand and to take into account its concession of error.[39] Though we must "give the issue independent review,"[40] we conclude that remand is warranted.

The district court's imposition of the ten-year mandatory minimum sentence was plain error. The Supreme Court determined in *United States v. O'Brien*[41] that a court may not impose a thirty-year mandatory minimum under § 924(c)(1)(B)(ii), unless the jury determines beyond a reasonable doubt that the firearm at issue was a machine gun.[42] Subsequently, in *Alleyne v. United States*,[43] the Supreme Court held that any fact issue that increases the

---

[35] *United States v. Lopez-Velasquez*, 526 F.3d 804, 806 (5th Cir. 2008) (per curiam).

[36] *United States v. Scott*, 821 F.3d 562, 570-71 (5th Cir. 2016).

[37] *United States v. Williams*, 821 F.3d 656, 658 (5th Cir. 2016) (quoting *United States v. Hebron*, 684 F.3d 554, 559 (5th Cir. 2012)).

[38] *United States v. Duhon*, 541 F.3d 391, 397 (5th Cir. 2008) (alteration in original) (quoting *United States v. Olano*, 507 U.S. 725, 732 (1993)).

[39] *See Scott*, 821 F.3d at 571.

[40] *United States v. Castaneda*, 740 F.3d 169, 171 (5th Cir. 2013) (per curiam) (quoting *United States v. Hope*, 545 F.3d 293, 295 (5th Cir. 2008)).

[41] 560 U.S. 218 (2010).

[42] *Id.* at 235.

[43] 133 S. Ct. 2151 (2013).

mandatory minimum sentence must be submitted to a jury and found beyond a reasonable doubt.[44]  A mandatory minimum sentence of five years is generally required under 18 U.S.C. § 924(c)(1)(A)(i) for possession of a firearm in furtherance of a drug crime, but, as earlier noted, the minimum term of imprisonment increases to ten years if the firearm is a sawed-off shotgun.[45] The Supreme Court has held that jury unanimity is required in a federal criminal trial as to each element of a federal crime.[46]  Read together, the Supreme Court's decisions make clear that the mandatory minimum ten-year sentence under § 924(c)(1)(B)(i) could not be imposed in the present case unless the factfinder at trial, which was a jury, unanimously found beyond a reasonable doubt that Suarez possessed a sawed-off shotgun in furtherance of a drug trafficking crime.  The jury instruction did not require that the jury find which of the two firearms charged in Count II—the pistol or the sawed-off Winchester shotgun—formed the basis of its verdict.  One or more jurors could have failed to find that the Winchester sawed-off shotgun was possessed in furtherance of drug trafficking.  In light of *Alleyne*, the district court's sentencing error was plain.[47]

This error affected Suarez's substantial rights.  Suarez received a sentence of imprisonment that the district court said it would not have imposed

---

[44] *Id.* at 2155.

[45] *See* 18 U.S.C. § 924(c)(1)(B)(i).

[46] *See, e.g., Richardson v. United States*, 526 U.S. 813, 817 (1999) (observing "that a jury in a federal criminal case cannot convict unless it unanimously finds that the Government has proved each element" of the offense) (citing *Johnson v. Louisiana*, 406 U.S. 356, 369–371 (1972) (POWELL, J., concurring); *Andres v. United States*, 333 U.S. 740, 748 (1948); FED. R. CRIM. P. 31(a)); *see also Apprendi v. New Jersey*, 530 U.S. 466, 477 (2000) (explaining that "trial by jury has been understood to require that 'the truth of every accusation, whether preferred in the shape of indictment, information, or appeal, should afterwards be confirmed by the unanimous suffrage of twelve of [the defendant's] equals and neighbours . . . .'") (quoting 4 WILLIAM BLACKSTONE, COMMENTARIES ON THE LAWS OF ENGLAND 343 (1769)).

[47] *See United States v. Scott*, 821 F.3d 562, 570-71 (5th Cir. 2016).

but for its conclusion that a mandatory minimum ten-year sentence under § 924(c)(1)(B)(i) was required. The district court's statement establishes with reasonable probability that Suarez would have received a lesser sentence but for the court's error.

The error seriously affects the fairness, integrity, and public reputation of the judicial process for a number of reasons. Principles found in *Alleyne* itself support this conclusion. The Court recognized in *Alleyne* that "[e]levating the low-end of a sentencing range heightens the loss of liberty associated with the crime: the defendant's 'expected punishment has increased as a result of the narrowed range' and 'the prosecution is empowered, by invoking the mandatory minimum, to require the judge to impose a higher punishment than he might wish.'"[48] The Supreme Court reasoned that "[t]his reality demonstrates that the core crime and the fact triggering the mandatory minimum sentence together constitute a new, aggravated crime, each element of which must be submitted to the jury."[49] In this same vein, the Court observed that "[w]hen a finding of fact alters the legally prescribed punishment so as to aggravate it, the fact necessarily forms a constituent part of a new offense and must be submitted to the jury."[50] The error here is a Sixth Amendment violation, not solely a sentencing error. When a court fails to submit an issue to a jury, in violation of the Sixth Amendment, "the fairness, integrity, or public reputation of judicial proceedings" is implicated, when, as here, the consequences for the defendant are an additional five years of

---

[48] *Alleyne v. United States*, 133 S. Ct. 2151, 2161 (2013) (quoting *Apprendi v. New Jersey*, 530 U.S. 466, 522 (2000) (THOMAS, J., concurring)).

[49] *Id.*

[50] *Id.* at 2162.

imprisonment and the evidence that would have supported a jury's finding on the omitted element is not "'overwhelming' or 'essentially uncontroverted.'"[51]

The Court explained in *Alleyne* that the Sixth Amendment is violated because "[i]t is no answer to say that the defendant could have received the same sentence with or without that fact [that must be found by a jury]."[52] That is because "[i]t is obvious, for example, that a defendant could not be convicted and sentenced for assault, if the jury only finds the facts for larceny, even if the punishments prescribed for each crime are identical. One reason is that each crime has different elements and a defendant can be convicted only if the jury has found each element of the crime of conviction."[53] The Court explained that an aggravating fact is "an element of a separate, aggravated offense that must be found by the jury, regardless of what sentence the defendant *might* have received if a different range had been applicable."[54] "Indeed, if a judge were to find a fact that increased the statutory maximum sentence, such a finding would violate the Sixth Amendment, even if the defendant ultimately received a sentence falling within the original sentencing range (i.e., the range applicable without that aggravating fact)."[55] In the present case, if we permitted the sentence to stand, Suarez would be imprisoned for an offense that a jury never found he committed. The district court said that it would not punish Suarez as it did but for the ten-year mandatory minimum sentence, which the district court erroneously thought applied. A Sixth Amendment violation seriously affects the fairness, integrity, and public reputation of the judicial process in this case because it results in the imposition of a sentence

---

[51] *United States v. Cotton*, 535 U.S. 625, 633 (2002) (quoting *Johnson v. United States*, 520 U.S. 461, 470 (1997)).

[52] 133 S. Ct. at 1262.

[53] *Id.*

[54] *Id.* (emphasis in original).

[55] *Id.*

of an additional five years of imprisonment for a crime for which there was no conviction, and the evidence that might have supported a conviction under §924(c)(1)(B)(i) is not strong.

This determination regarding the fourth prong of plain error review is consistent with prior decisions of this court, even absent a Sixth Amendment violation.[56] Similarly, in *United States v. John*,[57] we held that the fourth prong was met when the guidelines sentencing range was improperly calculated, and the sentence imposed exceeded the applicable range by 21 months of imprisonment.[58] We based that determination on a number of considerations, including the fact that the sentence was reached without consideration of the correct range and because, were the sentence affirmed, it would be imposed without any findings that ordinarily must accompany a sentence that is significantly above the guidelines range.[59] We know in the case before us today that the district court would not have imposed an additional five years of imprisonment had it known that the mandatory minimum ten-year sentence was inapplicable.

---

[56] *See United States v. Mudekunye*, 646 F.3d 281, 290-91 (5th Cir. 2011) (per curiam) (concluding the plain error standard was satisfied when the sentence of 97 months of imprisonment was 19 months above the correct range); *United States v. Sandlin*, 589 F.3d 749, 757-58 (5th Cir. 2009) (concluding, in a case in which the defendant was sentenced to 36 months of imprisonment and the correct guidelines range was 30-36 months, that "the dramatic increase in sentence satisfies the fourth prong by affecting the fairness of this proceeding. We therefore exercise our discretion to correct the unobjected-to error"); *United States v. Garza-Lopez*, 410 F.3d 268, 275 (5th Cir. 2005) (finding the fourth prong of plain error satisfied when the applicable range was 33-41 months of imprisonment and the sentence was 77 months); *United States v. Alfaro*, 408 F.3d 204, 209-10 (5th Cir. 2005) (concluding that the fourth prong of plain error was satisfied when the sentence was 50 months and the correct Guidelines range was 15-21 months); *United States v. Villegas*, 404 F.3d 355, 364-65 (5th Cir. 2005) (per curiam) (vacating and remanding after applying plain error standard when the sentence was 21 months and the correct advisory range was 10-16 months).

[57] 597 F.3d 263 (5th Cir. 2010).

[58] *Id.* at 286.

[59] *Id.*

## No. 16-41267

In a case involving monetary restitution, rather than liberty, this court vacated a sentence after applying the plain error standard of review when the defendant was ordered to pay $164,988.98, and "without the error, the court could not have ordered restitution in an amount greater than $54,384.43."[60] Resentencing was similarly required after plain error review when the award exceeded the permissible amount of restitution by $70,000.[61] It is difficult, if not impossible, to place a monetary value on one's liberty. But it is apparent that being subjected to five additional years of imprisonment without any jury finding to authorize that punishment is at least as offensive to notions of fairness as the imposition of restitution that is excessive by $70,000.

We may exercise our discretion to vacate a sentence imposed without the requisite finding by a jury[62] if the evidence of the unproven factual predicate for a statutory minimum sentence enhancement is not "'overwhelming' and 'essentially uncontroverted.'"[63] Here, the evidence regarding the Winchester shotgun is not overwhelming and essentially uncontroverted.

### IV

The dissenting opinion contends that we should not vacate the sentence or remand for resentencing, advancing several arguments. First, the dissenting opinion asserts that Suarez failed to address the fourth prong of plain error review in his briefing in our court.[64] We disagree. There is no requirement that a defendant use the words "fourth prong" in order to raise sufficiently an issue that is subject to plain error review. Federal Rule of

---

[60] *United States v. Maturin*, 488 F.3d 657, 663 (5th Cir. 2007).

[61] *See United States v. Inman*, 411 F.3d 591, 595 (5th Cir. 2005).

[62] *See United States v. Duhon*, 541 F.3d 391, 397 (5th Cir. 2008).

[63] *United States v. Cotton*, 535 U.S. 625, 633 (2002) (quoting *Johnson v. United States*, 520 U.S. 461, 470 (1997)) (finding evidence overwhelming and uncontroverted that a drug conspiracy involved 50 or more grams of cocaine when evidence showed over a kilogram).

[64] *Post* at 23.

16

Appellate Procedure 28(a)(8)(A) requires that an appellant's brief contain his or her "contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellate relies."[65]  Under "a prudential construct that requires the exercise of discretion," "[f]ailure to satisfy the requirements of Rule 28 . . . ordinarily constitutes abandonment of the issue."[66]  However, in exercising our discretion on this matter, "we must liberally construe briefs in determining what issues have been presented for appeal."[67]

Suarez's brief sufficiently presented his argument.  His contentions regarding the ten-year mandatory minimum sentence are pertinent to his positions regarding both the Sixth Amendment violation and the sentence of imprisonment itself, both of which Suarez concedes in his brief are reviewed under the plain error standard.  In contending that the district court plainly erred when it failed to require the jury to find which specific firearm formed the basis of the guilty verdict on Count II, Suarez explained that prior to trial, in the Notice of Penalty issued by the court, he was apprised that Count II carried a term of imprisonment of not less than 5 years.  His brief also recounts that in his initial appearance, the magistrate judge admonished him that the minimum sentence for Count II was five years (not ten years) and that no mention was made of the ten-year minimum.  He asserts in his brief that the failure of the court to require the jury to indicate which firearm or firearms listed in the indictment was possessed in furtherance of a drug trafficking crime was not a "minor" omission because if the jury had "attributed the pistol to Mr. Suarez and not the disassembled Winchester shotgun, the mandatory minimum would have remained at five years instead of being increased to ten."

---

[65] FED. R. APP. P. 28(a)(8)(A).

[66] *United States v. Miranda*, 248 F.3d 434, 443 (5th Cir. 2001).

[67] *Id.* at 444.

Suarez argues that the district court's "hand was forced into sentencing Mr. Suarez to an enhanced [ten-year] minimum sentence that nobody was anticipating." The brief then quotes the district court's statement that it had no discretion regarding the length of the sentence because of its conclusion that a ten-year mandatory minimum sentence applied. These are *facts*, not boilerplate assertions about the fourth prong of plain error, that pertain to the gravity of the Sixth Amendment violation and corresponding error in sentencing.

The very next section of Suarez's brief, challenging the sentence of 180-months of imprisonment, reflects that Suarez filed a notice of no objections to the PSR, conceding that his sentencing arguments are subject to plain error review. The first sub-heading in this section of the brief asserts that "[b]y judicially fact-finding the enhancement increasing the mandatory minimum sentence from five year to ten years, the district court removed a required fact-question [sic] from the province of the jury." This again reflects the argument that the Sixth Amendment violation and ten-year minimum sentence are inextricably related. The brief then discusses Supreme Court decisions which have held that any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and the brief asserts that "the finding that Suarez possessed the sawed-off shotgun in furtherance of drug-trafficking activity was a fact question to be decided by the jury." He continues with further argument, including the assertion that his "sentence of 180 months was procedurally unreasonable because it was based upon a judicial fact-finding of an issue that was required to be submitted to, and found by the jury. Appellant's sentence was increased by five years due to an enhancement he had no notice of, and that was not proven to the requisite burden of proof. Therefore, this sentence should be vacated." These *facts* coupled with citations to Supreme Court decisions regarding the Sixth

Amendment's requirements are more than adequate to support a conclusion that the Sixth Amendment error and consequent sentencing error seriously affects the fairness, integrity or public reputation of judicial proceedings.

None of the many decisions of our court cited by the dissenting opinion hold that in order to brief the fourth prong of plain error review adequately, the words "fairness, integrity or public reputation of judicial proceedings" must be used.[68]  To the contrary, the cases cited hold only that there must be a "showing" regarding the fourth prong.[69]  A "showing" regarding the fourth prong has been made by Suarez in his initial brief as to why the sentence imposed for a crime for which no jury convicted him must be vacated, if the principles sought to be embodied in the fourth prong have any real meaning and power.  This court evaluates substantive, not formulaic, arguments and rules accordingly.  Suarez explained that his sentence is predicated on a crime that the jury never found was committed, the district court would not have imposed the sentence but for its error, and that his sentence of imprisonment was increased by five years.  The fourth prong has not only been adequately briefed, but satisfied.

The dissenting opinion quotes this court's unpublished decision in *United States v. Monroe*,[70] in support of the proposition that "Suarez's brief waives any claim to plain-error relief for the reasons we identified" in that

---

[68] *Post* at 24 (citing *United States v. Caravayo*, 809 F.3d 269, 273−74 (5th Cir. 2015) (per curiam); *United States v. Rivera*, 784 F.3d 1012, 1018 n.3 (5th Cir. 2015); *United States v. Andaverde-Tinoco*, 741 F.3d 509, 523 (5th Cir. 2013); *United States v. Monroe*, 629 F. App'x 634, 637−38 (5th Cir. 2015) (per curiam) (unpublished); *United States v. Carrillo-Gonzales*, 627 F. App'x 366, 367 (5th Cir. 2015) (per curiam) (unpublished); *United States v. Handy*, 647 F. App'x 296, 300−01 (5th Cir. 2016) (per curiam) (unpublished); and *United States v. Neria*, 628 F. App'x 256, 258 (5th Cir. 2015) (per curiam) (unpublished)).

[69] *See id.*

[70] 629 F. App'x 634 (5th Cir. 2015) (per curiam) (unpublished).

case.[71]   The only error alleged on appeal in *Monroe* was "that the district court did not have a sufficient factual basis to accept his plea."[72]   The defendant sought reversal of his conviction.  His sentence was not at issue.  This court held with regard to the third prong of the plain error standard of review, that Monroe had failed to show that his substantial rights were affected because he failed to "show a reasonable probability that, but for the error, he would not have entered the plea."[73]   With regard to the fourth prong of plain error review, we explained that the defendant had "pointed to nothing beyond" the alleged failure to require presentation of a sufficient factual basis to accept Monroe's guilty plea to establish that the error impugned the fairness, integrity or public reputation of the court system.[74]   We did not hold in *Monroe* that a defendant's brief is inadequate unless it expressly recites the well-known elements of the fourth prong of plain error review.

Consistent with *Monroe,* Suarez has pointed to more than the Sixth Amendment error.  He has "pointed to"[75] facts.  These include the fact that the district court stated that "if it weren't for the mandatory minimums, I probably would go less than [120 months], but I don't have that power."  He pointed to the fact that the result of the district court's error was the imposition of a ten-year mandatory minimum sentence of imprisonment.

The circumstances of this case involve a "material and substantial" over-sentencing,[76] a government concession of plain error, and facts that do not overwhelming support the conclusion that the disassembled Winchester was

---

[71] *Post* at 27.

[72] *Monroe*, 629 F. App'x at 635.

[73] *Id*. at 636 (quoting *United States v. Dominguez Benitez*, 542 U.S. 74, 83 (2004)).

[74] *Id*. at 638.

[75] *Id*.

[76] *United States v. John*, 597 F.3d 263, 289 (5th Cir. 2010).

possessed in furtherance of drug trafficking at the time alleged. The fourth prong of plain error review is satisfied.

The dissenting opinion argues that the facts in this case do not "seriously call[] into question the integrity of our judicial system," and that "[n]o one should reasonably think that the result here is unfair to this unobjecting defendant."[77] In determining on plain error review whether Sixth Amendment error seriously affects the fairness, integrity, or public reputation of judicial proceedings, courts should consider whether evidence of the element of the crime that was not submitted to the jury was "'overwhelming' and 'essentially uncontroverted.'"[78] As discussed above regarding the sufficiency of the evidence to support a conviction under Count II and the consequent five-year mandatory minimum sentence, we cannot say that there was no evidence to support a reasonable juror's conclusion that Suarez possessed the Winchester shotgun in furtherance of drug trafficking. But that evidence does not overwhelmingly establish that the disassembled Winchester was possessed in furtherance of drug trafficking at the time alleged in the indictment.

It is clear that Sixth Amendment error flowing from the failure to submit an element of a crime to a jury "may be forfeited . . . by the failure to make timely assertion of the right," and that when a jury "surely" would have found the missing element, a defendant should not be permitted to escape the more severe punishment prescribed by Congress.[79] The Supreme Court made plain in *Cotton* that "[t]he real threat then to the 'fairness, integrity, and public reputation of judicial proceedings' would be if respondents, despite the overwhelming and uncontroverted evidence that they were involved in a vast

---

[77] *Post* at 28.

[78] *United States v. Cotton*, 535 U.S. 625, 633 (2002) (quoting *Johnson v. United States*, 520 U.S. 461, 470 (1997)).

[79] *Id.* at 634 (quoting *Yakus v. United States*, 321 U.S. 414, 444 (1944)).

## No. 16-41267

drug conspiracy, were to receive a sentence prescribed for those committing less substantial drug offenses because of an error that was never objected to at trial."[80]   But we cannot say, based on the facts of this case, that the jury "surely" would have found that Suarez possessed the Winchester shotgun in furtherance of drug trafficking *at the time alleged in the indictment*.   We therefore exercise the discretion under the plain error standard of review to remand to the district court for resentencing.

*     *     *

For the foregoing reasons, Suarez's convictions on all counts are AFFIRMED.  However, we VACATE the district court's sentencing order as to Count II and REMAND for resentencing.

---

[80] *Id.*

No. 16-41267

JERRY E. SMITH, Circuit Judge, dissenting:

Mr. Suarez has plenty of advocacy on his behalf; the rule of law has none. By advancing all the unbriefed points of plain error, the panel majority takes up the considerable slack left by counsel's total failure to argue the fourth prong, and the government wilts, at best, and begs on Suarez's behalf, at worst. Yet at oral argument, the most the Department of Justice could do to support its confession of error was to say that "it feels like the right thing to do." Alas.

The panel decision marks a new low in this court's plain-error jurisprudence, although it is a bonanza for lawyers who submit inadequate briefs. It would be malpractice for any Federal Public Defender or criminal defense counsel in Texas, Louisiana, or Mississippi not to cite the majority opinion for the proposition that this circuit no longer requires plain error to be briefed on appeal. The well-intentioned majority opinion is error in so many respects that it is hard to know where to begin. I agree with affirming the convictions but respectfully dissent from the inexplicable decision to vacate the sentence.

At its core, the majority opinion overlooks the essential character of the American system of justice as adversarial, not inquisitorial. We expect a criminal defendant to raise issues and objections in the trial court and, whether or not they are articulated there, to bring them again as an appellant. Alert to this potential deficiency, this panel, before oral argument, sent the lawyers a notice requesting supplemental briefing.[1] In response, the only case the

---

[1] The first two paragraphs of the notice read as follows:

Some decisions of this court suggest that the burden is on the defendant appellant to show entitlement to plain-error review and that an argument that a sentence is reversible plain error is waived or abandoned for failure to demonstrate

## No. 16-41267

government could muster to support fourth-prong relief was the unpublished (and hence non-precedential) opinion in *Neria* that was listed in the notice. Despite having the issue flagged in advance, neither the government nor Suarez's attorney is able to point to a single published case in which we have given plain-error relief where the defendant did not adequately show how each of the required four prongs was satisfied.

Our published caselaw is unequivocal:

[The defendant's] statutory challenge cannot succeed on plain error review because he fails to argue that the alleged error affected the fairness, integrity, or public reputation of judicial proceedings. "We have . . . refused to correct plain errors when as here, the complaining party makes no showing as to the fourth prong." *United States v. Rivera*, 784 F.3d 1012, 1018 n.3 (5th Cir. 2015); *see United States v. Andaverde-Tinoco*, 741 F.3d 509, 523 (5th Cir. 2013) ("[T]he burden is on the defendant to demonstrate that the error affects the fairness, integrity, or public reputation of judicial proceedings.") . . . .

*United States v. Caravayo*, 809 F.3d 269, 273−74 (5th Cir. 2015) (per curiam).

---

satisfaction of each of the four prongs of the plain-error test in the appellant's opening brief. More specifically, this precedent suggests that the court will not exercise its plain-error discretion if the appellant does not specifically show how the alleged sentencing error seriously affects the fairness, integrity, or public reputation of judicial proceedings under, e.g., *Puckett v. United States*, 556 U.S. 129 (2009). Some precedent suggests also that this court is not bound by the government's concession of reversible plain error.

The letter briefs should discuss whether the issue is waived in this case for failure of adequate briefing. Relevant caselaw includes *United States v. Caravayo*, 809 F.3d 269, 273−74 (5th Cir. 2015) (per curiam); *United States v. Rivera*, 784 F.3d 1012, 1018 n.3 (5th Cir. 2015); *United States v. Andaverde-Tinoco*, 741 F.3d 509, 523 (5th Cir. 2013); *United States v. Monroe*, 629 F. App'x 634, 637−38 (5th Cir. 2015) (per curiam); *United States v. Carrillo-Gonzales*, 627 F. App'x 366, 367 (5th Cir. 2015) (per curiam); *United States v. Handy*, 647 F. App'x 296, 300−01 (5th Cir. 2016) (per curiam); and *United States v. Neria*, 628 F. App'x 256, 258 (5th Cir. 2015) (per curiam). These are only examples, and counsel is free to refer to other relevant authorities.

No. 16-41267

Even showing that the first three prongs are met is not enough. "[T]he defen-dant points to nothing beyond the district court's error and the increase in her sentence that the error may have caused." *Rivera*, 784 F.3d at 1018.

Suarez's supplemental letter answering the pre-argument inquiry admits that his briefing on appeal[2] falls well short of the above standard. He concedes that

> [t]he only thing the brief failed to do was to go through each prong of plain-error review analysis step by step but despite failing to do so, it is clear from the record and the brief each prong has been met . . . . As it relates to the 4th prong, Appellant met it's [*sic*] burden that the error affected the fairness, integrity, or public reputation of the judicial pro-ceedings. While Appellant did not use those exact words, the fact Appellant's sentence was increased by 5 years contrary to Supreme Court precedent, it clearly affected the fairness of the proceedings.

The majority's first shortcoming, therefore, is its refusal to enforce the well-established requirement that to obtain plain-error relief, an appellant must adequately address the four prongs in his brief. In his supplemental letter, in attempting to show how his brief sufficiently addressed plain error, Suarez points to only three pages: "The issue was clearly presented for appeal in pages 26 to 28 of the Appellants [*sic*] Brief." Although in its desperate effort to rescue Suarez from a ditch, the majority ranges far and wide throughout the brief to find snippets in support of adequate arguments, Suarez directs us only to pages 26 to 28.

I will make it easy for future defense counsel to use the majority's opinion as an excuse for inadequate briefing, by setting forth *in toto* the argument con-tained on pages 26–28 of Suarez's brief. It shows how little this circuit now

---

[2] Suarez filed an opening brief but not a reply brief.

No. 16-41267

requires to make a successful fourth-prong argument.  I reproduce pages 26−28

in the footnote.[3]

---

[3] The brief reads as follows:

The District Court plainly erred by not requiring a jury finding on which specific firearms formed the basis of the guilty verdict reached on Count 2.

In *Apprendi v. New Jersey*, 530 U.S. 466, 490, 120 S. Ct. 2348, 147 L. Ed. 2d  435 (2000), and *Alleyne v. United States*, 133 S. Ct. 2151, 2158, 186 L. Ed. 2d 314 (2013), the Supreme Court held that factual determinations that increase maximum or minimum sentences, other than a prior conviction, must be found by a jury beyond a reasonable doubt (or admitted by the defendant).  The recent Fifth Circuit opinion in *United States v. Haines*, further explored this longstanding rule and found "facts that increase the mandatory minimum sentence are therefore elements and must be submitted to the jury and found beyond a reasonable doubt." *United States v. Haines*, 803 F.3d 713, 738 (5th Cir. 2015).

In the Indictment returned by the Grand Jury, Count 2 listed two specific weapons, a short-barreled shotgun and a pistol.   ROA.13.   In the Notice of Penalty, Appellant was put on notice that this count carried a term of imprisonment "of not less than 5 years."   ROA.16.   At Mr. Suarez' initial appearance, the honorable Don Bush admonished Mr. Suarez and again stated the minimum sentence for Count 2 was five years.  ROA.176 at 12−15.  Suarez was never admonished that the mandatory minimum was, in actuality a ten year minimum because of the allegation of the sawed-off shotgun.  This fact was not known to him until it was revealed within the Presentence Report.  ROA.665.

When the jury verdict was returned, the verdict for Count 2 simply found Mr. Suarez guilty as to the offense charged, but did not indicate which of the firearms listed within the indictment (the shotgun or the pistol), this verdict referenced. This omission is not a minor one.  Had the jury attributed the pistol to Mr. Suarez and not the disassembled Winchester shotgun the mandatory minimum would have remained at five years instead of being increased to ten.  As such, Judge Mazzant's hand was forced into sentencing Mr. Suarez to an enhanced minimum sentence that nobody was anticipating:

THE COURT:  I am a judge who tries to look at each person, and because of the conspiracy and the firearms – usually somebody that has no criminal history like you have or a Category I would be someone the Court would look at as a possible variance in terms of fashioning a non-guideline sentence.  But in your case I don't have that discretion because of the mandatory minimums.

. . .

I'll follow the recommendation, and if it weren't for the mandatory

No. 16-41267

This brief does nothing more than to use the words "plainly erred" once in the entire document. In the 32-page brief, there is no mention of any case that sets forth the test for showing plain error, nor is the test even stated. There is no listing of the four required prongs, much less a discussion of how any of them is satisfied. Pages 26–28 do give information that would support the first three prongs, but without even mentioning that those prongs exist. As quoted above, however, "the burden is on the defendant to demonstrate that the error affects the fairness, integrity, or public reputation of judicial proceedings." *Caravayo*, 809 F.3d at 274 (citation omitted).

Suarez's brief waives any claim to plain-error relief for the reasons we identified in *United States v. Monroe*, 629 F. App'x 634 (5th Cir. 2015) (per curiam). Suarez

> makes no specific argument on this court's exercise of its discretion. Instead, [he] simply argues for a general reversal based on the district court's alleged error. In *United States v. Rivera*, we rejected a "*per se* fourth-prong argument" and declined to remedy a plain error where the appellant made no showing on why the court should exercise its discretion. *Rivera*, 784 F.3d at 1018. Observing that a per se approach would "collapse the fourth prong into the first three," we noted that this court has "refused to correct plain errors when . . . the complaining party

---

minimums, I probably would go less than that, but I don't have that power. ROA.575–76.

The 924(c) charge contained within Count 2 consisted of two distinct firearms, each with different mandatory minimums. Because the mandatory minimum was enhanced based upon one, but not both of these firearms, the question of which firearm was being attribute to the defendant was a fact question that should have been submitted to the jury in accordance with *Apprendi*, *Alleyne*, and *Haines*. It was not, and as a result of this clear error, the Appellant's rights were directly and substantially effected [*sic*] by having his sentence increased by an additional five years.

Appellant's brief at 26–28 (ellipses in brief).

27

makes no showing as to the fourth prong." *Id.* at 1018−19 & n.3. Because [Suarez] has pointed to nothing beyond the district court's alleged error to justify reversal, he has failed to show why his conviction "impugns the fairness, integrity, or public reputation of the court system." *Id.* at 1019.

*Monroe*, 629 F. App'x at 637−38 (ellipses in original). Suarez's counsel is guilty of precisely the same insufficiency that we identified in *Rivera*, 784 F.3d at 1018. Yet this panel majority enthusiastically excuses it.

The panel majority turns all of the cited decisions to dust.[4] Nowhere does Suarez's brief even mention the exercise of "discretion," much less words such as "seriously," "integrity," "fairness," or "reputation." There is little left of adversarial testing for plain error on appeal, because this inquisitorial panel has declared it unnecessary.

Even if the fourth prong had been adequately briefed, the facts are far from what should justify the rare invocation of plain-error relief. No one should feel sorry for Mr. Suarez, who was caught in the midst of an extensive and sordid drug operation. As the majority accurately recounts, "police . . . found . . . Suarez—who . . . acted as 'consul or overseer . . .—in the master bedroom [with] a distributable amount of methamphetamine, baggies, scales, security cameras, a .380 caliber Davis pistol, shotgun shells, body armor, and a .20 gauge Winchester sawed-off shotgun [and] a .12 gauge Ithaca sawed-off shotgun . . . in a second bedroom." No one should reasonably think that the result here is unfair to this unobjecting defendant, much less that it seriously

---

[4] This circuit's rule of orderliness may be an impediment to the precedential impact of the majority's sweeping pronouncements. To the extent that the decisions I have cited are binding, this panel majority has no authority to undermine them. No doubt the judges in the majority believe in good faith that their opinion does not contravene precedent, so for purposes of showing my disagreement, I treat the majority opinion as though it were binding on future panels.

calls into question the integrity of our judicial system, as the plain-error test requires.

As the majority accurately explains, the unpreserved error is that, as for the mandatory minimum sentence, the instruction did not require the jury to find which of the two firearms charged in Count II—the pistol or the Winchester—formed the basis of its verdict. The jury found that Suarez, in furtherance of the drug-trafficking offense, possessed either the pistol (with mandatory minimum of five years) or the Winchester (a sawed-off shotgun requiring a minimum of ten years). It is easy to conclude, however, that Suarez could have "possessed" either or both. The Winchester was undeniably there.

Weapons were plainly integral to this drug-trafficking operation. One witness testified that Suarez "knew about the Winchester." Another stated "that Suarez would sit with the shotgun during drug deals." There is ample support for the jury's conclusion that Suarez possessed at least one of the two guns . . . that . . . furthered the drug-trafficking crimes.

The majority also correctly upholds the verdict for possession (actual or constructive) of the Winchester and the Ithaca because Suarez "had knowledge of and access to" them. As the majority candidly recounts, "[p]olice found the Winchester in plain sight and close proximity to Suarez," and "Suarez knew of the Winchester and sometimes carried a sawed-off shotgun during drug deals." Under these seedy facts, it is difficult to understand how the majority can conclude that the failure to ask the jury specifically whether Suarez possessed the Winchester in furtherance of his crimes affects, much less "seriously" affects, the integrity of the courts.

In sum, the majority commits numerous errors of law and fact. It evaporates the requirement that plain error be properly raised or briefed on appeal.

No. 16-41267

For the administration of justice, the unhappy consequence is that a defendant who fails to raise error in the district court is also excused from raising it on appeal, at least when the government foolishly agrees. Further, the majority misreads the record in concluding that "the evidence regarding the Winchester shotgun is not overwhelming." The evidence, to the contrary, is plain and abundant, and any supposed error would by no means impugn the integrity of the judicial system.

The scratchy aspect of plain-error review is that our proper duty is almost always to let unnoticed error stand. A perfectionist goal of fixing every prejudicial mistake is inconsistent with plain-error review as the Supreme Court has explained it.

Reversal of this sentence hardly "feels like the right thing to do," to quote government counsel in default. Our adversarial system of justice deserves better. I respectfully dissent.