# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

July 11, 2025

Lyle W. Cayce
Clerk

No. 24-40244

_____

UNITED STATES OF AMERICA,

*Plaintiff—Appellee*,

*versus*

RODOLFO REYNA-ZAPATA,

*Defendant—Appellant*,

CONSOLIDATED WITH

_____

No. 24-40245

_____

UNITED STATES OF AMERICA,

*Plaintiff—Appellee*,

*versus*

GREGORIO GONZALEZ-BARRAGAN,

*Defendant—Appellant*,

CONSOLIDATED WITH

_____

No. 24-40260

————————

UNITED STATES OF AMERICA,

*Plaintiff—Appellee.*

*versus*

JUAN ANTONIO MARTINEZ-PADILLA

————————

Appeal from the United States District Court
for the Southern District of Texas
USDC Nos. 5:21-CR-1700-1,
5:21-CR-1700-3, 5:21-CR-1700-2

————————

Before HIGGINBOTHAM, JONES, and SOUTHWICK, *Circuit Judges*.
PER CURIAM:[*]

Reyna-Zapata, Gonzalez-Barragan, and Martinez-Padilla (collectively, "Appellants") were convicted and sentenced as co-conspirators for possession of a firearm in furtherance of a drug trafficking crime or a crime of violence. Because the evidence was sufficient to establish that Appellants constructively possessed the firearms, we AFFIRM.

## I. Background

In September, 2021, Tocayo, a cartel organizer for Cartel Del Noreste, contacted a Confidential Source ("CS") to assist in coordinating a kidnapping and murder. Tocayo crossed from Nuevo Laredo, Mexico to Laredo, Texas, and met with the CS shortly thereafter. The target was a man identified as "CGT," who had allegedly stolen 40 to 50 kilograms of cocaine

---

[*] Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

from the Cartel. Tocayo informed the CS that three sicarios (hitmen) had been smuggled into Laredo, Texas to kidnap or murder CGT and recover any drugs or money found while doing so.

Tocayo drove the CS to downtown Laredo, where they met with Reyna-Zapata ("Reyna") and Gonzales-Barragan ("Gonzalez"), two of the sicarios. Tocayo provided the men with cell phones and identified the CS as their primary point of contact. Tocayo also informed Reyna and Gonzalez that the CS would provide a vehicle and weapons. Tocayo gave the CS $1000 and directed the CS to an address to pick up firearms later that afternoon.

On or about September 13, 2021, the CS told Reyna that the CS would be picking them up to provide a car and that the firearms would be inside. When the CS asked what firearms they wanted, Reyna asked for "two long ones and two short ones." When Martinez-Padilla ("Martinez"), the third sicario, complained that the operation was taking too long, the CS assured them that the CS would pick them up within the hour.

Meanwhile, the Laredo Police Department and the Drug Enforcement Agency staged a vehicle in the parking lot of a Laredo sporting goods store. Despite its normal appearance, the vehicle was disabled, and four unloaded firearms were placed in a locked firearms case in the trunk. The case extended through the trunk to the back seats and was visible from outside the car.

With the trap laid, the CS picked up the sicarios and drove them to the lot, stopping one space away from the vehicle. Reyna retrieved the keys to the vehicle from the gas cap, opened the driver's door, and sat down. Barragan and Martinez approached the vehicle and opened the passenger-side doors. Laredo Police Department SWAT swiftly converged on the car, arresting Martinez at the vehicle and Reyna and Barragan after a short chase.

24-40244
c/w Nos. 24-40245, 24-40260

A grand jury indicted Reyna, Barragan, and Martinez on several related charges. All three stipulated to committing the crimes alleged in Count 1, conspiracy to possess with intent to distribute 5 or more kilograms of cocaine, and Count 5, conspiracy to kidnap CGT, and pled guilty to Count 5. 18 U.S.C. § 1201(a)(1), (c); 21 U.S.C. §§ 846, 841(a)(1), (b)(1)(A). They proceeded to a bench trial on Count 6, where the judge found them guilty of constructive possession of firearms in furtherance of a drug trafficking crime or crime of violence. 18 U.S.C. § 924(c)(1)(A). Each appellant timely appealed his § 924(c) conviction on sufficiency of the evidence grounds.

## II. Standard of Review

In reviewing sufficiency of the evidence challenges to bench trial convictions, we consider "whether the finding of guilt is supported by substantial evidence." *United States v. Tovar*, 719 F.3d 376, 388 (5th Cir. 2013) (citations omitted). "Evidence is sufficient to sustain a conviction if any rational trier of fact could have found that the evidence established guilt beyond a reasonable doubt." *United States v. Shelton*, 325 F.3d 553, 557 (5th Cir. 2003). We consider "the evidence as a whole and construe it in the light most favorable to the verdict." *Id.*

## III. Discussion

18 U.S.C. § 924(c)(1)(A) criminalizes the possession of a firearm in furtherance of a drug-trafficking crime or a crime of violence. All three Appellants stipulated that they participated in a drug trafficking offense by conspiring to take and distribute any recovered drugs and pled guilty to conspiring to kidnap CGT. All three Appellants further stipulated that, if they possessed a firearm, it was in furtherance of that offense. The only issue at the bench trial and on appeal is whether Appellants possessed the firearms.

Possession under § 924(c)(1)(A) may be actual or constructive. *United States v. Suarez*, 879 F.3d 626, 632 (5th Cir. 2018); *see United States v. Smith*, 997 F.3d 215, 219 (5th Cir. 2021). A defendant has actual possession when he has "direct physical control," for example when he is carrying the firearm, or it is otherwise "on his person." *Smith*, 997 F.3d at 219; *Henderson v. United States*, 575 U.S. 625, 626, 135 S. Ct. 1780, 1784 (2015). A defendant constructively possesses a firearm "when he has ownership, dominion, or control over either the firearm itself or over the premises in which the firearm is found." *Smith*, 997 F.3d at 219 (internal quotations omitted). Constructive possession "may be joint with others, and it may be proven with circumstantial evidence." *United States v. McKnight*, 953 F.2d 898, 901 (5th Cir. 1992). "[T]he determination of whether constructive possession exists is not a scientific inquiry, and the court must employ a common sense, fact-specific approach." *United States v. Meza*, 701 F.3d 411, 419 (5th Cir. 2012) (internal quotations omitted).

On appeal, Appellants contend that they were unable to take control or exercise dominion over the disabled vehicle or the firearms inside the locked case. In support, they primarily distinguish cases in which this court has found possession when the defendant had more immediate access to a firearm or a working vehicle. *See, e.g.*, *United States v. Prudhome*, 13 F.3d 147, 149 (5th Cir. 1994); *United States v. Franklin*, 561 F.3d 398, 402–04 (5th Cir. 2009) (upholding a § 924(c)(1)(A) conviction where defendant kept a loaded 9mm pistol under the driver's seat). Appellants contend that "sting operations prevent actual or constructive possession" because "dominion or control remains . . . with the Government" throughout.

It is well settled that "Government agents may not originate a criminal design, implant in an innocent person's mind the disposition to commit a criminal act, and then induce commission of the crime so that the Government may prosecute." *Jacobson v. United States*, 503 U.S. 540, 548,

112 S. Ct. 1535, 1541 (1992). One can imagine a hypothetical sting where the design and control of the operation remains so wholly with the Government that it begins to sound in entrapment. Here, though, Appellants were hitmen who undisputedly requested the firearms and intended to use them to kidnap and murder CGT and recover the allegedly stolen cocaine.

That law enforcement took precautionary measures and reduced the likelihood that the sicarios' intentions would manifest into endangering others does not change the fact that Appellants: asked for firearms to be provided with the vehicle; took actual possession of the keys to that vehicle; approached, unlocked, and entered the vehicle; and would have taken actual possession of the firearms absent the timely arrests. The vehicle's inoperable condition and any temporary difficulty posed by a locked firearms case may distinguish this operation from some cases, but they do not negate the Appellants' constructive possession of the vehicle's contents under these facts. *See United States v. Charles*, 469 F.3d 402, 405–06 (5th Cir. 2006) (upholding a § 924(c) conviction where the defendant was arrested in a storage unit containing over 400 grams of cocaine base and a disassembled .380 pistol); *see also United States v. Posner*, 868 F.2d 720, 724 ("[A] reasonable jury [could] conclude that actual possession of the contraband passed to [defendant] when he took possession of the keys to the van.").

Finally, we reject the contention that certain Appellants were unaware that the firearms were in the vehicle, and thus couldn't have had constructive possession. *See United States v. Speer*, 30 F.3d 605, 612 (5th Cir. 1994) ("The 'carrying' requirement of Section 924(c) is met where a defendant operates a vehicle knowing the firearm is in the car."). The stipulated facts clearly establish that Reyna requested the CS to provide four firearms; the CS told Appellants that he would "provide the car with the firearms already inside the car;" and the firearm case was visible through the windows of the vehicle.

6

24-40244
c/w Nos. 24-40245, 24-40260

To suggest that Appellants were entirely unaware of the firearms would defy "common sense." *Meza*, 701 F.3d at 419.

## IV. Conclusion

Viewing "the evidence as a whole and . . . in the light most favorable to the verdict," there is sufficient evidence for a rational trier of fact to conclude that Appellants constructively possessed the firearms in furtherance of a drug trafficking crime or crime of violence. *Shelton*, 325 F.3d at 557. AFFIRMED.